IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SANDRA KELLY, JANICE WALTMAN, AND SYLVIA PATINO, INDIVIDUALLY & ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>*Plaintiffs*,<br><br>v.<br><br>HEALTHCARE SERVICES GROUP, INC.,<br><br>*Defendant*. | Civil Action No. 2:13-cv-00441-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Renewed Opposed Motion and Brief to Conditionally Certify Collective Action and Send Notice to Class Members Pursuant to 29 U.S.C. § 216(b). (Dkt. No. 56.) Having considered the parties' written submissions, the Court **GRANTS** Plaintiffs' motion.

### I. Background

Plaintiffs Sandra Kelley, Janice Waltman, and Sylvia Patino (collectively, the "Plaintiffs"), former employees of Defendant Health Services Group, Inc. ("HSG" or "Defendant"), filed this action on their own and on behalf of all other similarly situated employees of HSG, alleging that HSG violated the FLSA by failing to pay Plaintiffs and other similarly situated employees for all hours actually worked and by failing to pay them at least one and a half times their regular pay rates for all hours worked in excess of forty in a work week. *See* Complaint at ¶ 51.

The Court previously denied without prejudice Plaintiffs' initial motion to conditionally

1

certify a nation-wide class consisting of all Account Managers ("AM") who were employed by HSG within the applicable statutory period, which class included both the salaried and the hourly-paid AMs. (*See* Dkt. No. 38.) The Court granted Plaintiffs leave to conduct additional discovery to obtain further support for its proposed class or to determine a lessor appropriate scope of its class definition. (*See id.*) Upon completion of the additional discovery, Plaintiffs have timely renewed their motion for conditional class certification, which is now before this Court.

## II. Applicable Law

The Court incorporates by reference the relevant law governing conditional class certification under 29 U.S.C. § 216(b), as set forth in detail in the Court's previous order. (*See* Dkt. No. 38.) To reiterate, the Court adopts the *Lusardi* two-step approach in deciding whether to certify this case as a collective action. *See Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

The parties dispute from the outset the proper evidentiary standard for conditional certification. The Court previously noted that, given the limited evidence presented at this stage of the proceeding, the standard for conditional class certification is a "fairly lenient one." *See* Dkt. No. 38 at 3 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995)). Defendants, however, urge the Court to now impose a more stringent evidentiary burden on Plaintiffs, since they have conducted limited discovery in this case.

Whether or not to adopt a more stringent evidentiary burden at the conditional class certification stage clearly depends upon the extent of the discovery conducted. *See In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, H-11-2266, 2012 WL 3308880, at *21 (S.D. Tex. Aug. 10, 2012). If discovery has been extensive such that the case is no longer "in a

2

nascent stage," the Court may either skip the first *Lusardi* stage and instead consider the motion for certification under the second stage of the *Lusardi* approach, or follow the *Lusardi* two-step process but impose a heightened evidentiary standard. *See id.* (citation omitted); *Blake v. Hewlett-Packard Co.*, 4:11-CV-592, 2013 WL 3753965, at *5 (S.D. Tex. July 11, 2013) (imposing a heightened evidentiary standard for conditional class certification when the parties had at least five months of discovery, the plaintiffs had deposed three executive or senior level employees and reviewed thousands of pages of documents). If, however, the parties have engaged in only limited discovery, a heightened standard of proof is improper. *In re Wells Fargo Wage*, 2012 WL 3308880, at *20 (citing *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010)) (declining to apply the heightened evidentiary burden when the parties had conducted limited discovery for only two months.) "The fact that some discovery has been conducted does not increase the plaintiffs' burden at this first conditional certification stage to the more onerous standard that applies at the second, decertification stage." *Id.*

Here, by this Court's previous order denying certification without prejudice, the Court granted Plaintiffs leave to conduct additional discovery *and* to renew their motion for conditional class certification within three months. To date, HSG has produced about 1300 pages of documents to Plaintiffs, and Plaintiffs have deposed HSG' Senior Vice President David Hurlock. The extent of such discovery can still fairly be considered as limited, especially when measured against the nation-wide class Plaintiffs have sought to certify, which class involves AMs working in forty-eight states throughout the country and in over three thousand facilities. (*See* Dkt. No. 27 at 2-3.)

Defendant bases its opposition on *Valcho v. Dallas County Hosp. Dist.*, where the court

3

applied a heightened evidentiary standard after the plaintiffs, as here, had conducted a three-month discovery on class certification issue. *Valcho v. Dallas County Hosp. Dist.*, 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008). However, in *Valcho*, the parties had jointly submitted a proposed scheduling order seeking to allocate three months' discovery to the entire class certification issue. *See id.* In other words, the *Valcho* plaintiffs' class-certification-related discovery was substantially complete at the time of the court's order. Such is not true in this case. Here, neither the Court nor the parties have indicated that the three-month period previously granted marks the end of the discovery process on the class certification issue. Given that the discovery conducted so far is fairly construed to be limited, particularly in light of the size of the potential class, the Court is not persuaded that it should impose a more stringent evidentiary burden on Plaintiffs at this stage.

### III. Analysis

Unlike their initial motion seeking to certify a single nation-wide class including all AMs employed by Defendant, here Plaintiffs instead seek to conditionally certify two separate classes: (1) All salaried Account Managers in the Housekeeping sector who worked for Healthcare Services Group, Inc., at anytime from May 31, 2010 to the present, excluding those who worked in Ohio, Pennsylvania, or Tennessee (the "Salaried AM Class");[1] and (2) All hourly Account Managers in the Housekeeping sector who worked for Healthcare Services Group, Inc., at anytime from May 31, 2010 to the present (the "Hourly AM Class"). The Court will address the certification issue for each of these classes in turn.

### a. Plaintiffs Have Demonstrated The Existence of Similarly Situated Salaried AMs

---

[1] Plaintiffs have excluded Salaried AMs in Ohio, Pennsylvania, and Tennessee due to other pending litigation by AMs against HSG in those states.

Plaintiffs seek to certify a nation-wide Salaried AM Class based on the allegation that these employees were improperly classified as salaried employees and exempt from the overtime compensation requirements of the Fair Labor Standards Act ("FLSA"), while in reality their work duties and responsibilities did not properly qualify them for exempt status. (*See* Compl. ¶ 10; Dkt. No. 11 at 2.) To qualify for exempt status, an employee's "primary duty" must be the performance of exempt work. 29 C.F.R. § 541.700 (a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's jobs as a whole." *Id.* Factors to consider when determining the primary duty of an employee include "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* The amount of time spent performing exempt work can be a useful guide, albeit not the sole test, in determining whether exempt work is the primary duty of an employee. *Id.* "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.*

Here, in supporting the conditional certification of the Salaried AM Class, Plaintiffs have submitted affidavits from fifteen former and current HSG AMs from twenty-one different facilities in Texas, North Carolina, South Carolina, Indiana, Washington, California and Kentucky, all paid on a salaried basis. (*See* Dkt. No. 56 Exs. 15-29.) Despite being classified by Defendant as exempt under the FLSA, all declarants state that they have been required to perform manual labor for anywhere between 50% and 90% of their workday, and frequently worked in

excess of forty hours a week. Such manual labor includes cleaning floors, changing bed sheets, cleaning the dining room, removing trash, dusting and damp mopping, stripping and waxing floors, and doing laundry. All declarants admit that they are given a labor budget by Defendant containing a fixed number of hours with which he/she may schedule other employees at a particular facility to perform these manual labor functions. The AMs, however, have no control over the total number of hours provided for within the budget, and are generally not allowed to deviate from the limit.[2] When the budget is exhausted, the AMs themselves have to perform whatever manual labor tasks are left to be performed at their facility. Further, during their respective time as District Managers ("DM") at HSG, former AMs Laird (Indiana) and Pike (Washington), both observed that almost all AMs within their geographical range are paid salary but are also expected to perform many hours of manual work or perform manual labor for the majority of their workday. (*See* Dkt. No. 56-18 ¶ 8; Dkt. No. 56-23 ¶ 14.) Regarding the amount of supervision the AMs received during their employment, all declarants state that they were closely supervised by HSG district managers and afforded very little discretion in performing their job duties. (*See* Dkt. No. 56 Exs. 18, 23, 27-29.) Such is corroborated by a former Texas-based HSG district manager, who declares that the DM decides the "job routine," or the daily tasks, of each AM, sometimes on a "hour by hour" basis. (Dkt. No. 56-4 ¶ 5.)

Aside from the fifteen affidavits, Plaintiffs have additionally submitted written job descriptions for AMs from HSG's internal Operations Manual. The Manual describes the "main function" of the AM as "a supervisor during the work day," and that "training, quality control and in-servicing are all part of" the AM's responsibility. (Dkt. No. 56-9.) Meanwhile, however, the

---

[2] Of the fifteen declarants, only Yescas (California) declares that she may deviate from the fixed number of her labor budget. (*See* Dkt. No. 56-28 ¶ 14.)

6

AM "must be able to perform the job assignments of the Light Housekeeper, Heavy Housekeeper and Laundry Worker." (*Id.*) The "essential functions of the job" as an AM include, among other things, "the ability to bend and sort linen a minimum of 2 hours a day; the ability to lift 20 to 30 pound bags of soiled linen to the washer for loading a minimum of 40 times a day, the ability to lift 10-15 pound buckets of water from the floor to the sink a minimum of 15 times a day, the ability to push a 50 pound trash container or linen hamper safely in and out of elevators and down hallways, and the ability to bend at the knees, waist and neck at least 50 times a day to allow the sorting and/or folding of linens or mopping and cleaning of patient areas." (*Id.*) The Manual further describes the AM's "working condition" as "stand[ing], walk[ing] and bend[ing] most of the day," and involving "pushing and pulling, carrying weight up to 50 pounds, twisting, bending and reaching from floor to waist height and from waist to their head." (*Id.*) Such written job description, applicable across all HSG facilities, indicates that an AM's responsibility may include substantial amounts of manual labor.[3] Considering all of the above, the Court finds that a preliminary showing of similarly-situated AMs has been established in regard to their job functions. This is ultimately borne out by the reality that performing manual labor constitutes a substantial or even a major part of their daily job duties.

Defendant next argues that class certification is improper because HSG does not have a common policy of classifying AMs as exempt, as the decision to classify an AM as exempt or nonexempt is made on an individual basis. The Court disagrees. It is undisputed that not all

---

[3] Defendant argues that the "essential functions" of an AM, as described in HSG's Operations Manual, were merely put in place to comply with the American With Disabilities Act, and describe those physical duties that an AM may be called on to perform, if necessary. (Dkt. No. 58 at 7 n.28.) Defendant thus contends that such evidence is irrelevant to the assessment of an AM's "primary duty" under the FLSA. The Court disagrees. Regardless of the intent behind listing the "essential functions" of an AM in the Operations Manual, Defendant essentially concedes that an AM "may be called on to perform" these substantial manual labor task as part of their job responsibility. At this preliminary stage of the proceeding, such evidence is clearly probative to the Court's inquiry of whether similarly situated AMs exist with respect to job responsibility.

7

HSG AMs are classified as exempt. Indeed, the "Hourly AM Class" Plaintiffs have additionally sought to certify focuses precisely on AMs of non-exempt status. Despite the existence of non-exempt AMs, however, Plaintiffs have submitted a copy of HSG's Management Development Program, where, under the section entitled "Management Trainee Pay Policy," Account Manager is described as "*generally*…an exempt position," i.e., "he/she is not entitled to overtime pay and is not required to record hours worked."[4] (Dkt. No. 56-13 at 19 (emphasis added).) Mr. Laird, former HSG District Manager in Indiana, affirms that AMs are "usually paid salary," and the decision to pay an AM hourly rests not on the individual job duties of the AM, but on budget concerns. (Dkt. No. 56-8 ¶¶ 8-9.) For instance, the only time he is aware that HSG paid an AM an hourly rate was when HSG lost contracts with a certain facility and had to move the AMs from there to other facilities which already had resident AMs. (*Id.*) Mr. Pike, HSG District Manager in Washington, likewise declares that AMs are "paid a salary by default," and a few AMs he supervises are paid hourly due to the small size of the facilities where the AMs work, but not based on these AMs' individual job duties. (Dkt. No. 56-23 ¶ 6.) Indeed, in HSG's 30(b)(6) deposition, in response to a question about how HSG decides whether to pay AMs on a salaried or hourly basis, Mr. David Hurlock, Senior Vice President of HSG, testified that such decision depends on a "financial analysis with the customer," and "[t]he range…or the dollars available" at the facilities. (Dkt. No. 56-1 at 87:7-15.) Mr. Hurlock, however, never indicated that such a decision rests on the individual job duties of an AM in any way. Accordingly, the evidence establishes at least a preliminary showing that, as a matter of policy, HSG's AMs are generally paid a salary and classified as exempt, and that an AM's individual job duties play no real part in

---

[4] The "Management Development Program" submitted by Plaintiffs is dated January 31, 2004, which predates the recovery period of Plaintiffs' proposed class. Defendant, however, has not challenged the relevancy of the document on the basis that it is outdated or that HSG's current practice substantially differs from that of the year 2004.

HSG's decision whether to pay an AM on a salaried or hourly basis. In other words, individual job duties do not affect HSG's decision to classify AMs as exempt or nonexempt. The Court is persuaded, for purposes of conditional class certification, that a similarly situated group of AMs exist, in that they perform manual labor as a major part of their job responsibilities yet are paid on a salaried basis and misclassified as exempt under FLSA. Plaintiffs have made a sufficient showing at this preliminary stage to warrant the issuance of notice, to permit full discovery, and to then allow the Court to conduct a more rigorous analysis at the final decertification stage, with respect to the Salaried AM Class.[5]

### b. Plaintiffs Have Demonstrated a Common Policy that Affects All The Hourly Paid AMs

Regarding the Hourly AM Class, Plaintiffs allege that similarly-situated hourly AMs exist, because they are all underpaid pursuant to HSG's illegal rounding policy. Under 29 C.F.R. § 785.48 (b), employers may round time, as long as such practice "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."

Here, HSG's rounding policy states that "employees are not permitted to punch in, sign in, or begin work seven (7) or more minutes before their scheduled start time, or seven (7) or more minutes after the end of their scheduled shift (out), without the prior approval of their supervisor." (Dkt. No. 56-32.) An internal memo, distributed to HSG's Senior Vice-Presidents, Divisional

---

[5] Defendant further alleges that certification is improper because about 16% of AMs nationwide are prohibited by collective bargaining agreements from performing any manual labor work at all. (Dkt. No. 58 at 6 n.22.) In other words, these AMs' job responsibilities are exclusively supervisory. To the extent such AMs exist, the Court agrees that they are likely not proper class members of the Salaried AM Class, as they likely have not been misclassified as exempt under the FLSA. That said, the existence of such "supervision-only" AMs does not alter the Court's conclusion that similarly-situated plaintiffs exist, at least among the remaining 84% of AMs. Further, evidence is scant at this preliminary stage as to the specific restrictions imposed by the collective bargaining agreements and the specific facilities subject to them. Without such, the Court is hindered in attempting to carve out with reasonable clarity this subset of "supervision-only" AMs from the Salaried AM Class. The Court, however, will consider evidence relating to the collective bargaining agreements and the "supervision-only" AMs at the decertification stage, when such evidence has been fully developed and can be presented in its entirety.

Vice-Presidents, Regional Vice-Presidents/Managers/Directors, and District Managers, emphasizes the importance of enforcing the seven-minute rule such that HSG will not be "obligate[d] to pay an additional quarter hour of wages." (Dkt. No. 56-33.) HSG concedes that this rounding policy has been in place for seven years and continues to be enforced. (*See* Dkt. No. 56-1 at 99:16-100:22.) However, it argues that certification of the Hourly AM Class is improper because HSG's rounding policy is not illegal.

Defendant has confused the function of conditional class certification with that of a summary judgment motion. At the conditional class certification stage, the Court's primary concern is whether "similarly-situated plaintiffs" exist, who may together be the victims of "a single decision, policy or plan." *See, e.g.*, *Richardson v. Wells Fargo Banks, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *2 (S.D. Tex. Feb. 2, 2012). Determining the legality of such identified policy is better left to the summary judgment stage, when the underlying evidence has been fully developed through discovery.[6] Further, HSG's internal memo demonstrates that the rounding policy has been put in place at least partly to avoid the obligation to pay "an additional quarter hour of wages." As such, Plaintiffs' claim that hourly AMs are underpaid as a result of the policy is not frivolous on its face. Given that HSG has conceded the existence of the common rounding policy applicable to all hourly paid AMs, the Court is satisfied that similarly situated hourly AMs exist because they are all alleged victims of such rounding policy. Plaintiffs have met the evidentiary burden for conditionally certifying the Hourly AM Class.

  c. **Plaintiffs' Class Definitions**

As noted above, Plaintiffs have proposed the class definitions for the Salaried AM Class

---

[6] Indeed, both decisions relied on by Defendant in demonstrating the legality of HSG's rounding policy are the courts' orders upon motions for summary judgment. *See Contini v. United Trophy Mfg., Inc.*, 6:06-CV-432-ORL-18UA, 2007 WL 1696030 (M.D. Fla. June 12, 2007); *East. v. Bullock's Inc.*, 34 F. Supp. 2d 1176 (D. Ariz. 1998).

and the Hourly AM Class respectively as follows: (1) All salaried Account Managers in the Housekeeping sector who worked for Healthcare Services Group, Inc., at anytime from May 31, 2010 to the present, excluding those who worked in Ohio, Pennsylvania, or Tennessee; and (2) All hourly Account Managers in the Housekeeping sector who worked for Healthcare Services Group, Inc., at anytime from May 31, 2010 to the present. While Plaintiffs have satisfied their evidentiary burden to demonstrate the existence of similarly-situated plaintiffs for both proposed classes, the Court disagrees that the classes should be defined with respect to the time period of "at anytime from May 31, 2010 to the present," i.e., three years prior to the filing date of the complaint.

The statute of limitations under the FLSA is two years, but can be extended to three years for a "willful violation." 29 U.S.C. § 255(a). In a case such as this, where Plaintiffs have pled willful violations of the FLSA, each individual plaintiff will have a window of recovery extending back three years from the day that individual's consent form is filed with the Court. (*See* Compl. ¶ 51.) Therefore, both classes should be defined with respect to the time period of three years prior to the date Plaintiffs' notice is sent out, instead of three years prior to the date Plaintiffs filed their complaint. Accordingly, the Court defines both the Salaried AM Class and the Hourly AM Class with respect to the time period of three years prior to the date Plaintiffs' notice is sent out, but the Court adopts Plaintiffs' proposed class definitions in all other aspects. The class definitions do not affect the right of those individuals who have already filed their opt-in consent with the Court in this case.

### IV. Conclusion

For the reasons stated above, the Court hereby **GRANTS** Plaintiffs' Renewed Opposed

Motion to Conditionally Certify Collective Action (Dkt. No. 56), under the first step of the *Lusardi* framework as set forth in the Court's previously Order. (*See* Dkt. No. 38 at 3.)

**IT IS HEREBY ORDERED** that the Salaried AM Class shall be defined as: All salaried Account Managers in the Housekeeping sector who worked for Healthcare Services Group, Inc., at anytime from **[three years prior to the date when Plaintiffs send out notice]** to the present, excluding those who worked in Ohio, Pennsylvania, or Tennessee.

**IT IS FURTHER ORDERED** that the Hourly AM Class shall be defined as: All hourly Account Managers in the Housekeeping sector who worked for Healthcare Services Group, Inc., at anytime from **[three years prior to the date when Plaintiffs send out notice]** to the present.

**It IS FURTHER ORDERED** that Defendant shall have **ten (10) days** from this date to raise any objections as to the form of the letter and consent proposed by Plaintiffs and Plaintiffs' request for the names and addresses of all members of the putative class. Plaintiffs shall have **five (5) days** thereafter to respond to Defendant's objections.

**So ORDERED and SIGNED this 2nd day of May, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE