IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

SANDRA KELLY, JANICE WALTMAN,
AND SYLVIA PATINO, INDIVIDUALLY
& ON BEHALF OF OTHERS SIMILARLY SITUATED,

Plaintiffs

Case No 2:13-cv-00441-JRG

vs.

HEALTHCARE SERVICES GROUP, INC.,

Defendant.

**DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE
APPLICABILITY OF THE FLUCTUATING WORKWEEK  METHOD FOR
CALCULATING DAMAGES**

## TABLE OF CONTENTS

**Page**

I.   The Questions Underlying Whether The FWW Method Applies Are Questions Of Fact For A Jury, And Cannot Be Decided On Summary Judgment. ...................................3

II.  The Motion For Summary Judgment Should Be Denied Because Plaintiffs' "Evidence" Does Not Prove As A Matter Of Law That The Parties Had Not Agreed Upon A Fixed Weekly Wage For Fluctuating Hours.................................................3

   A.   HSG Has Put Forth Extensive Evidence That AMs Understood Their Pay Would Compensate Them For All Hours Worked, Precluding Summary Judgment. ................................................................................................................5

   B.   Plaintiffs Misrepresent The Contents Of HSG's "Typical Offer" To AMs And, Regardless, The Contents Of A Form Offer Letter Are Not Dispositive. ................................................................................................................8

   C.   Plaintiffs' Reliance On Documents Defaulting To List "Hours" Worked By AMs As 40 Per Week Or 80 Bi-Weekly Are Factually Inapposite, And Do Not Support Summary Judgment. ....................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Auer v. Atl. & Pacific Prop. Mgmt-Atlantic Div., Inc.*,
  No. 08-60194-CIV, 2009 WL 63063 (S.D. Fla. Jan. 5, 2009) .................................................. 2

*Black v. SettlePou, P.C.*,
  732 F.3d 492 (5th Cir. 2013) ......................................................................................... 3, 7, 10

*Cain v. Almeco USA, Inc.*,
  No. 1:12-CV-3296-TWT, 2013 WL 6051023 (N.D. Ga. Nov. 15, 2013) ................................ 2

*Clark v. Williamson Cnty.*,
  No. A-10-CA-869 LY, 2012 WL 1222950 (W.D. Tex. Apr. 11, 2012), *aff'd*,
  538 F. App'x 579 (5th Cir. 2013) ........................................................................................... 6

*Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*,
  No. 3:04-cv-1866-D, 2007 WL 2403656 (N.D. Tex. Aug. 23, 2007) ..................................... 4

*Evans v. Lowe's Cos., Inc.*,
  No. 3:CV-03-0438, 2004 WL 6039500 (M.D. Pa. Apr. 29, 2004) .......................................... 8

*Flast v. Cohen*,
  392 U.S. 83, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968) ............................................................ 2

*Fontenot v. Upjohn Co.*,
  780 F.2d 1190 (5th Cir. 1986) ................................................................................................ 4

*Givens v. Will Do, Inc. Houston*,
  No. 4:10-CV-02846, 2012 WL 1597309 (S.D. Tex. May 4, 2012) ............................ 2, 4, 8, 12

*Hopkins v. Texas Mast Climbers, L.L.C.*,
  No. CIV.A. H-04-1884, 2005 WL 3435033 (S.D. Tex. Dec. 14, 2005) ................................. 4

*Lamonica v. Safe Hurricane Shutters, Inc.*,
  711 F.3d 1299 (11th Cir. 2013) .............................................................................................. 8

*Ransom v. M. Patel Enters., Inc.*,
  734 F.3d 377 (5th Cir. 2013) ........................................................................................ passim

*Samson v. Apollo Res., Inc.*,
  242 F.3d 629 (5th Cir. 2001) .................................................................................................. 4

*Schreckenbach v. Tenaris Coiled Tubes, LLC*,
  No. 4:11-CV-4065, 2013 WL 178126 (S.D. Tex. Jan. 16, 2013) ........................................ 8, 9

*Taylor Farm Liab. Co. v. Viacom, Inc.*,
    234 F. Supp. 2d 950 (S.D. Ind. 2002) ..................................................................................2

*Tiffey v. Speck Ent., Ltd.*,
    418 F. Supp. 2d 1120 (S.D. Iowa 2006) ..............................................................................2

*Urnikis-Negro v. Am. Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010) ..............................................................................................11

Defendant Healthcare Services Group, Inc. ("HSG") hereby submits its opposition to the above-captioned Plaintiffs' Motion for Partial Summary Judgment ("Motion"). *See* Docket Entry 241. Given the facts and authorities set forth herein, the Motion should be denied.

## INTRODUCTION

The Court should deny the instant motion because there exists a genuine dispute as to material facts on the essential elements of the fluctuating workweek method of compensation (hereinafter referred to as the "FWW").[1] As set forth below, there exists significant contradictory evidence relating to each Plaintiff's claimed understandings regarding the application of the FWW. In addition to providing sufficient grounds for denying Plaintiffs' Motion, this contradictory evidence further demonstrates the individualized issues that would render these proceedings unfair if continued on a collective basis.

By way of background, in the Fifth Circuit, to avoid application of the FWW, Plaintiffs must prove they did not agree their salaries would compensate them for fluctuating hours. Plaintiffs cannot, and have not, done so here—and certainly not as a matter of law. In support of their Motion, Plaintiffs submit the deposition testimony of just 19 opt-in salaried Account Managers ("AMs"), internal wage data for one opt-in plaintiff, and two inapplicable and unauthenticated documents. This evidence does not prove the 19 deponents' claims as a matter of law, much less the claims of approximately 900 other opt-in plaintiffs. Instead, in opposition, HSG provides extensive evidence showing that the salaried AMs understood and agreed that they were being paid a fixed salary for all hours worked, including, *inter alia*, evidence from a senior divisional vice president, John Duncan Kelly, several District Managers, and multiple AMs, all of whom directly contradict Plaintiffs' factual averments on this issue. *See* HSG's

---

[1] Plaintiffs' Motion is directed at the conditionally-certified collective class of *salaried* account managers alleging misclassification as exempt employees, not those of the conditionally-certified collective class of *hourly* account managers alleging rounding-relating violations.

1

Response to Plaintiffs' Statement of Facts ("RPSF"), filed concurrently herewith, at ¶ 2.1, and Exhibits 1-62 referenced therein.

As numerous federal courts have held, where the parties dispute whether a FWW agreement existed (as they do here), such a factual question must be put to a jury. Accordingly:

> This is all grist for a jury trial, not summary judgment. [The] motion for summary judgment on the fluctuating workweek overtime formula should be denied, not because this is a misclassification case, but because there is a genuine factual dispute about the parties' understanding of how many work hours [the plaintiff's] salary was intended to compensate.[2]

Given the facts and authorities herein, Plaintiffs' Motion should be denied.

Alternatively, HSG also notes for the Court's consideration that many courts have held a motion such as that under consideration here to be premature inasmuch as Plaintiffs have not even established that they are entitled to overtime compensation under the FLSA.[3] Indeed, Plaintiffs' argument here essentially requests that this Article III Court render an impermissible advisory opinion before liability has even been established. *See Taylor Farm Liab. Co. v. Viacom, Inc.*, 234 F. Supp. 2d 950, 962-63 (S.D. Ind. 2002) (refusing to permit a party to seek relief for contribution prior to an adjudication against that party because, to do so, "would require courts to determine the relative fault of parties before making a finding that any of them are liable for damages at all" and "would be tantamount to giving advisory opinions, something which Article III courts are not permitted to do"); *see also Flast v. Cohen*, 392 U.S. 83, 96, 88 S. Ct. 1942, 1950, 20 L. Ed. 2d 947 (1968) ("[I]t is quite clear that the oldest and most consistent

---

[2] *Givens v. Will Do, Inc. Houston*, No. 4:10-CV-02846, 2012 WL 1597309, at *8 (S.D. Tex. May 4, 2012) (denying summary judgment on the FWW issue in a FLSA misclassification case where the parties disputed whether plaintiff's salary covered all hours worked).

[3] *See Cain v. Almeco USA, Inc.*, No. 1:12-CV-3296-TWT, 2013 WL 6051023, *7 (N.D. Ga. Nov. 15, 2013) (denying motion for summary judgment on the FWW as premature where "the Plaintiff has not established that she is entitled to damages"); *Auer v. Atl. & Pacific Prop. Mgmt-Atlantic Div., Inc.*, No. 08-60194-CIV, 2009 WL 63063, *4 (S.D. Fla. Jan. 5, 2009) (FWW determination "first requires a finding of liability by the company, and -- having not resolved the applicability of [an] exemption -- it would be premature to reach these issues before it is determined whether an FLSA violation even occurred"); *Tiffey v. Speck Ent., Ltd.*, 418 F. Supp. 2d 1120, 1128 (S.D. Iowa 2006) (same).

thread in the federal law of justiciability is that the federal courts will not give advisory opinions.") (internal quotations and citations omitted). The Motion should be denied for this reason as well.

## ANALYSIS

I. **The Questions Underlying Whether The FWW Method Applies Are Questions Of Fact For A Jury, And Cannot Be Decided On Summary Judgment.**

The Fifth Circuit has expressly held that "[t]he question of whether an employer and employee agreed to a fixed weekly wage for fluctuating hours *is a question of fact*." *Black v. SettlePou, P.C.*, 732 F.3d 492, 498 (5th Cir. 2013) (*citing Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 381 (5th Cir. 2013)) (emphasis added). To decide this question, which underlies the application of the FWW, the finder of fact must weigh "[t]he parties' initial understanding of the employment arrangement as well as the parties' conduct during the period of employment." *Black*, 732 F.3d at 498-99 (*citing Ransom*, 734 F.3d at 386).

Here, the parties genuinely dispute this essential question of fact (*see, e.g.*, RPSF at ¶ 2.1, citing Exhibits 1-62 thereto), and summary judgment is inappropriate.

II. **The Motion For Summary Judgment Should Be Denied Because Plaintiffs' "Evidence" Does Not Prove As A Matter Of Law That The Parties Had Not Agreed Upon A Fixed Weekly Wage For Fluctuating Hours.**

In order to grant Plaintiffs' Motion, this Court must find that the Parties (*i.e.*, HSG and each opt-in of the salaried class of AMs) had not agreed upon a fixed weekly salary for fluctuating hours. Plaintiffs conclude their brief by stating that HSG "cannot meet its burden of proof to show that 'there was a clear mutual understanding of the parties that the fixed salary was compensation for all hours worked each workweek' as required by Ransom v. M. Patel Enterprises, Inc.." Motion at 11. That is not the standard to be applied here, and is not even language from that case. Plaintiffs are moving for summary judgment. They must meet their

3

burden to show that the parties had not agreed upon a fixed weekly wage for fluctuating hours. As they state in their brief: "The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case." Motion at 2.

Moreover, unlike with the case of an exemption defense (where the burden is on the employer), the law states that *Plaintiffs* have the burden to, in short, disprove the applicability of the FWW. *See Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) ("This Court has never directly addressed the issue of which party—whether the employer or the employee—has the burden of proving compliance with the requirements of the FWW method. We hold that the employee has this burden."); *Givens v. Will Do, Inc. Houston*, No. 4:10-cv-02846, 2012 WL 1597309 (S.D. Tex. May 4, 2012) ("Because it is neither a defense nor an exemption to FLSA coverage, the employee bears the burden of proving that the fluctuating workweek method does not apply."); *see also Hopkins v. Texas Mast Climbers, L.L.C.*, No. CIV.A. H-04-1884, 2005 WL 3435033, at *7 (S.D. Tex. Dec. 14, 2005) ("Unless the employee establishes that his salary was supposed to cover some fixed, lesser number of hours, the salary will be presumed to cover all hours actually worked."). Thus, any inferences with respect to the FWW issue must be drawn in HSG's favor, and Plaintiffs face an extraordinary burden as a result. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (where "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor"); *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (noting that the "beyond peradventure" standard imposes a "heavy" burden on a movant).

Plaintiffs attempt to meet this "heavy" burden by providing three types of supposed "evidence" in support of their Motion:

- *First*, Plaintiffs cite the deposition testimony of only 19 opt-in plaintiffs for the proposition that over 900 opt-ins, as a whole, understood their pay to compensate them for a 40-hour workweek. *See* Motion at 9-10.

- *Second*, Plaintiffs argue that HSG broke down AMs' annual salary in an offer letter based upon a 52-week year and 40-hour workweek, proving that their salary was not intended to cover all hours worked. *See id.* at 10.

- *Third*, Plaintiffs claim that certain emails and time records show that the company "estimates AMs' pay based on a 40-hour workweek." *Id.*

However, HSG's contrary evidence and the legal authorities demonstrate that this purported "evidence" does not meet Plaintiff's burden.

### A. HSG Has Put Forth Extensive Evidence That AMs Understood Their Pay Would Compensate Them For All Hours Worked, Precluding Summary Judgment.

Plaintiffs argue that the deposition testimony of 19 opt-in plaintiffs—out of approximately 900 total putative class members—is somehow dispositive of whether an agreement existed between the parties. *See* Motion at 9-10. As detailed throughout HSG's responses to Plaintiffs' statement of facts, all such statements attributed to these 19 opt-ins were either taken out of context, mischaracterized, or are directly contradicted by the evidence HSG presents in response. *See* RPSF at ¶¶ 2.3-2.22. Moreover, as the below case law demonstrates, Plaintiffs' "after-the-fact" assertions are not dispositive.

Indeed, in *Ransom*, the Fifth Circuit rejected that the mere expectation or understanding of a plaintiff would be dispositive, and instead looked to the parties' course of conduct:

> In our view, the Seventh Circuit properly affirmed the FWW determination of the regular rate of pay. The relevant facts of the plaintiffs' employment in the present case are quite similar to the plaintiff's in Urnikis-Negro. There, as here, the testimony showed that the employee *expected* to work some general number of roughly fixed hours; yet, after she was hired, the employee often worked substantially *more* than that number of hours each week,

5

and she was always paid only her fixed weekly wage. Id. at 680. The case before us fits this precedent. As outlined above, the EMs at Party City were told that the workweek was "around" 55 hours, but they were also told that the number would fluctuate from time to time. Moreover, the undisputed facts demonstrate that they often worked more, and sometimes significantly fewer hours. This course of conduct, along with the parties' initial understanding of the employment arrangement, establishes that the plaintiffs here were to be paid a fixed salary for the total number of hours they worked in a week. See Singer v. City of Waco, Tex., 324 F.3d 813, 824–25 (5th Cir.2003) (stating that "[w]e can determine how many hours the salary is 'intended to compensate' by examining what happens under the contract."); see also, Urnikis-Negro, 616 F.3d at 681 n. 8 (collecting cases suggesting that, in the absence of an explicit agreement, course of conduct may be used to infer an agreement regarding the number of hours a salary was intended to compensate).

*Ransom*, 734 F.3d at 385-86 (emphasis in original); *see also Clark v. Williamson Cnty.*, No. A-10-CA-869 LY, 2012 WL 1222950, at *6 (W.D. Tex. Apr. 11, 2012), *aff'd*, 538 F. App'x 579 (5th Cir. 2013) ("*The only evidence suggesting a lack of agreement [as to the use of the FWW] are the Plaintiffs' after-the-fact claims that they were confused about the scheme.* While the Court is sympathetic with this, such claims of confusion are simply insufficient as a matter of law to raise a fact question regarding whether the FWW has been mutually agreed to by an employer and employee.") (emphasis added).

Moreover, HSG contradicts the "evidence" Plaintiffs cite with (1) the declarations of 17 past and present AMs who did not join this litigation, (2) the declarations of 11 District Managers who supervised many of the same opt-ins whose testimony is relied upon by Plaintiffs, and (3) deposition testimony of numerous other opt-in plaintiffs who were deposed in this case. This extensive evidence supports that AMs:

(a)  always understood their fixed salaries were intended as compensation for all hours worked, and that they were not entitled to overtime pay, unlike hourly employees;[4]

---

[4] *See* RPSF at AM Declarations (Exhibits 1, 4, 5, 7, 10-12, 14-17 at ¶¶ 6-7; Exhibits 2, 3, 6, 8, 9, 13 at ¶ 6); DM Declarations (Exhibits 18-27 at ¶¶ 4, 6, 7); Opt-in Plaintiff Deposition Transcripts (Exhibit 29, p.47:6-10; Exhibit

6

    (b)    always understood that their hours could vary from week to week—either more than 40 hours, or less than 40 hours—and they would still be paid the same fixed salary;[5]

    (c)    were never told by anyone at HSG that they were expected to work a strict 40 hour per week schedule, were never expected to work a strict 40 hour per week schedule, and were never told by anyone at HSG that their fixed salary was intended to compensate them for only 40 hours of work per week;[6]

    (d)    were responsible for setting their own hours and always understood that their hours might change from week to week, and in fact did so;[7]

    (e)    were asked whether they could work a flexible schedule when they interviewed for the AM position, confirmed they could do so, and understood that working fluctuating hours each week was part of the AM job;[8] and

    (f)    never requested overtime pay, told anyone that they were entitled to overtime, or complained about being paid their fixed salary without any separate overtime payments.[9]

Each and every one of these factors cited above was considered by the Fifth Circuit as being relevant to determining whether the FWW should apply under certain facts, and each supports HSG's position and the denial of summary judgment here. *See Ransom*, 734 F.3d at 382-87; *Black*, 732 F.3d at 499-500.

Moreover, in this case, the AMs were aware and/or understood that non-exempt employees clocked in and out and were paid for overtime, but the AMs were classified as exempt

---

33, p.31:11-18, 32:18-33:4; Exhibit 33, p.88:22-89:2; Exhibit 35, p.35:18-24; Exhibit 38, p.177:12-20; Exhibit 43, p.183:25-184:10; Exhibit 54, p.37:14-17); Declaration of John Duncan Kelly (Exhibit 62 at ¶¶ 2-3).
[5] *See* RPSF at AM Declarations (Exhibits 1-17 at ¶ 4); DM Declarations (Exhibits 18-27 at ¶ 4); Opt-in Plaintiff Deposition Transcripts (Exhibit 30, p.116:8-15; Exhibit 36, p.118:18-119:3; Exhibit 50, p.324:23-325:18, 326:10-14); Declaration of John Duncan Kelly (Exhibit 62 at ¶¶ 2-3).
[6] *See* RPSF at AM Declarations (Exhibits 1-17 at ¶ 4); DM Declarations (Exhibits 18-27 at ¶ 4); Opt-in Plaintiff Deposition Transcripts (Exhibit 45, p.153:9-24; Exhibit 55, p.23:19-20); Declaration of John Duncan Kelly (Exhibit 62 at ¶¶ 2-3).
[7] *See* RPSF at AM Declarations (Exhibits 1-17 at ¶ 5); DM Declarations (Exhibits 18-27 at ¶¶ 4-5); Opt-in Plaintiff Deposition Transcripts (Exhibit 36, p.112:22-113:9, 115:6-13, 118:18-119:3; Exhibit 40, p.162:6-163:4; Exhibit 44, p.32:22-33:9; Exhibit 49, p.63:3-14; Exhibit 59, p.119:14-17); Declaration of John Duncan Kelly (Exhibit 62 at ¶ 4).
[8] *See* RPSF at AM Declarations (Exhibits 1-17 at ¶ 5); DM Declarations (Exhibits 18-27 at ¶¶ 4-5); Opt-in Plaintiff Deposition Transcripts (Exhibit 50, p.86:18-25); Declaration of John Duncan Kelly (Exhibit 62 at ¶¶ 2-3).
[9] *See* RPSF at AM Declarations (Exhibits 1-17 at ¶ 6); DM Declarations (Exhibits 18-27 at ¶ 6); Opt-in Plaintiff Deposition Transcripts (Exhibit 31, p.246:17-20; Exhibit 33, p.88:22-89:2).

and not subject to the same rules.[10] This fact was given weight (among other factors) in another recent case determining that the FWW applied to a misclassified plaintiff's damages:

> [Plaintiff] was fully aware that hourly employees clocked in and out to monitor their overtime, yet he never clocked in or out, and was never asked to do so.

*Schreckenbach v. Tenaris Coiled Tubes, LLC*, No. 4:11-CV-4065, 2013 WL 178126, at *12 (S.D. Tex. Jan. 16, 2013) (granting summary judgment for employer on FWW issue).

As numerous courts have recognized, where the parties dispute whether the underlying facts support applying the FWW, like here, summary judgment is inappropriate and a jury must decide the facts.[11]

### B. Plaintiffs Misrepresent The Contents Of HSG's "Typical Offer" To AMs And, Regardless, The Contents Of A Form Offer Letter Are Not Dispositive.

In support of their Motion, Plaintiffs attach and cite to a document that they claim is "HSG's typical offer to AM[s]," to argue that HSG's breaking down the AMs' annual salary based upon a 52-week year and 40-hour workweek proves that their salary was not intended to cover all hours worked. *See* Motion at 10. However, a careful examination of the form letter attached to the Motion at Exhibit 20 ("Form Letter") shows that it does not support Plaintiffs' proposition. The Form Letter (made out to a fictitious "John Doe") states that it is intended to provide an "outline" to potential "Manager[s] in Training" ("MITs")—who are non-exempt,

---

[10] *See* RPSF at AM Declarations (Exhibits 1, 4, 5, 7, 10-12, 14-17 at ¶ 6); DM Declarations (Exhibits 18-27 at ¶ 6); Opt-in Plaintiff Deposition Transcripts (Exhibit 30, p.63:12-64:5; Exhibit 33, p.88:22-89:2; Exhibit 34, p.28:10-16; Exhibit 35, p.35:18-24; Exhibit 37, p.23:11-22, 111:8-11; Exhibit 43, p.183:25-184:10; Exhibit 52, p.256:22-257:15; Exhibit 53, p.71:10-15; Exhibit 57, p.28:10-29:9, 40:21-41:1, 171:21-172:10); Declaration of John Duncan Kelly (Exhibit 62 at ¶ 5 and Exhibit A thereto).

[11] *See, e.g., Givens*, 2012 WL 1597309 at *8 (denying summary judgment on the application of the FWW in a misclassification case "because there is a genuine factual dispute about the parties' understanding of how many work hours [the plaintiff's] salary was intended to compensate"); *Evans v. Lowe's Cos., Inc.*, No. 3:CV-03-0438, 2004 WL 6039500, at *1 (M.D. Pa. Apr. 29, 2004) ("Because there are genuine issues of material fact as to whether there was a clear mutual understanding that the FWW was rightfully applied to all Plaintiffs, the Defendant's Motion for Summary Judgment will be denied."); *accord Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013) (recognizing that, in a FWW case, "[t]he district court properly instructed the jury to calculate Appellees' regular rates of pay using the number of hours their salaries were intended to compensate [and b]ased on this instruction, the jury could have determined that Appellees' salaries were intended to compensate all hours worked and calculated their regular rates of pay accordingly").

hourly employees who could possibly later *become* AMs. *See* Motion at Exhibit 20, p.1. In addition, as HSG's exhibits show, other offer letters were sent by HSG to potential MITs that do not include hourly breakdowns for AM salaries—these offer letters just include annual salaries for AMs. *See* Exhibit 62 at ¶ 7, and Exhibit C thereto.

Moreover, HSG includes documents produced in discovery evidencing that AMs knew and were informed that they were salaried employees and not entitled to any additional pay for the hours they worked and, instead, were members of management responsible for ensuring that hourly employees were compensated for all hours worked and enforcing HSG's timekeeping policies. *See* Exhibit 62 at ¶¶ 5-6, and Exhibits A-B thereto. Such documents, combined with all of the other evidence HSG presents (*see* exhibits cited, *supra*, at 7-8), contradict Plaintiffs' position here. *See, e.g., Schreckenbach*, 2013 WL 178126 at *12 (holding that the FWW applied to plaintiff's misclassification claim, after weighing *both* the relevant documents and the parties' course of conduct, as follows: "Plaintiff does not offer evidence that, a reasonable person, in reading the offer letters given to him, would find that his pay was intended to compensate him for only forty hours per week and that additional hours were worked for 'free'. The plain language of *both offer letters and of both parties' conduct* make it clear that Plaintiff was to be considered exempt, and that he would receive a fixed salary, regardless of the exact number of hours worked in any given week.") (emphasis added).

Plaintiffs also argue that HSG "failed to produce any records showing a FWW agreement between HSG and AMs" (Motion at 11), but the Fifth Circuit has expressly rejected the need for HSG to produce such an "agreement," instead looking to the parties' testimony at trial:

> [T]he FWW method may only be applied to calculate overtime premiums when there is a contractual agreement between the employer and the employee that the employee will be paid a fixed weekly wage for hours that fluctuate from week to week. [Overnight Motor Transp. Co. v. ]Missel, 316 U.S. [572,] 580, 62 S. Ct.

9

> 1216[, 1221, 86 L. Ed. 1682 (1942)]; see also Blackmon, 835 F.2d at 1138. *However, there is no requirement that the employment agreement be in writing.* Ransom, 731 F.3d at 384-85, 2013 WL 4402983, at *6. *Accordingly, we turn to the parties' testimony regarding their understanding of the terms of their employment agreement* . . . .

*Black*, 732 F.3d at 499 (emphasis added). Here, "the parties' testimony regarding their understanding" is heavily conflicted and summary judgment is therefore inappropriate.

    **C.    Plaintiffs' Reliance On Documents Defaulting To List "Hours" Worked By AMs As 40 Per Week Or 80 Bi-Weekly Are Factually Inapposite, And Do Not Support Summary Judgment.**

Finally, Plaintiffs claim that HSG's payroll records show that the company "estimates AMs' pay based on a 40-hour workweek." Motion at 10-11. Courts have not granted weight to such conduct in deciding whether an agreement had been reached.

The Fifth Circuit in particular has recognized that 40 hours is the standard number of hours in a workweek. *See, e.g., Black*, 732 F.3d at 496 (explaining that "[t]he FLSA sets the standard workweek at forty hours"); *Ransom*, 734 F.3d at 380 (noting that "40 [is] the number of hours in a standard workweek"). Thus, HSG's use of 40 hours (or 80 hours, bi-weekly) in payroll documentation, where employees were expected to work fluctuating hours, is determinative of nothing. *See* Motion at Exhibit 22. Indeed, the "80.00" Plaintiffs reference in one AM's electronic payroll record is a computer generated field applied to every exempt employee (including District Managers, Regional Managers, and Regional Vice Presidents), and does not evidence anything specific to the exempt employee, such as time worked or an agreement to work 40 hours per week. *See* Exhibit 62 at ¶ 9.

Finally, Plaintiffs cite to Exhibit 21 to support a conclusion that AMs were expected to work 40 hours per week. Exhibit 21 was an email response to a question about a worker's compensation claim from a Workers' Compensation Claims Manager. *See* Motion at Exhibit 21, p.2 (correspondence listing Shina Jenkins as a "Workers' Compensation Claims Mgr."). Such

10

correspondence did not reflect the hours that AMs were expected to work or themselves expected to work, as the Workers Compensation department does not determine how many hours per week HSG employees work or how they are paid, and Worker's Compensation Claims Managers do not have the authority to make any such determinations. *See* Exhibit 62 at ¶ 8.

In other words, as the Seventh Circuit explained and the Fifth Circuit adopted, paying employees based upon a 40 hour workweek has nothing to do with whether their salary compensated them for all hours worked:

> Lash[, who hired Urnikis-Negro to work for AFPS,] testified at his deposition that *all of the firm's employees were paid on the basis of a 40-hour week.*
> \*\*\*
> *But Urnikis-Negro was not hired to work a fixed number of hours per week.* Although the district court found it likely that Urnikis-Negro when hired *believed* she would be working a 40-hour week, as she had for the bank, in fact she routinely worked many hours in excess of 40 per week throughout the period of her employment with AFPS; and the court found further that her salary was intended to compensate her for whatever hours she happened to work. *Thus, although her weekly pay was fixed, her weekly hours were indeterminate and routinely exceeded the standard workweek of 40 hours. In view of the Supreme Court's decision in* Missel*, this arrangement has an impact on both the calculation of her regular rate of pay and the amount of overtime pay to which she is entitled.*

*Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 668, 674 (7th Cir. 2010) (holding that the FWW properly applied to calculate plaintiff's unpaid overtime) (emphasis added).

Adopting the above analysis, the Fifth Circuit rejected that an "expectation" that an employee's schedule should consist of "some general number of roughly fixed hours" precluded the use of the FWW:

> The relevant facts of the plaintiffs' employment in the present case are quite similar to the plaintiff's in Urnikis–Negro. *There, as here, the testimony showed that the employee expected to work some general number of roughly fixed hours; yet, after she was hired, the employee often worked substantially* more *than that number of hours each week, and she was always paid only her fixed weekly wage.* Id. at 680. The case before us fits this precedent . . . . This course of conduct, along with the parties' initial understanding of the employment arrangement,

11

establishes that the plaintiffs here were to be paid a fixed salary for the total number of hours they worked in a week.

*Ransom*, 734 F.3d at 385-86 (emphasis added). In other words, Plaintiffs' purported "evidence" is irrelevant under Fifth Circuit precedent.

## CONCLUSION

As detailed above, the critical question regarding the application of the FWW—whether HSG and the salaried AMs agreed to a fixed weekly wage for fluctuating hours—is significantly disputed by the parties. Both sides present testimonial and other evidence supporting their respective positions. Where class members directly contradict each other, like here, "[t]his is all grist for a jury trial, not summary judgment." *Givens*, 2012 WL 1597309, at *4.

Thus, Defendant Healthcare Services Group, Inc. respectfully requests that the Court deny Plaintiffs' Partial Motion For Summary Judgment.

| | |
|---|---|
| Respectfully submitted, | Dated: April 6, 2015 |
| **CONSTANGY, BROOKS, SMITH & PROPHETE, LLP** | **PROSKAUER ROSE LLP** |
| | *s/ Kenneth D. Sulzer* |
| Steven Moore (*admitted pro hac vice*) | Kenneth D. Sulzer (pro hac vice) |
| Colorado State Bar No. 23320 | **LEAD COUNSEL FOR DEFENDANT** |
| smoore@constangy.com | **PER LOCAL RULE CV-11(a)** |
| 1625 17th Street, Third Floor | CA State Bar No. 120253 |
| Denver, CO 80202 | ksulzer@proskauer.com |
| Telephone: (720) 343-7540 | 2049 Century Park East, 32nd Floor |
| Facsimile: (720) 343-7541 | Los Angeles, CA 90067-3206 |
| | Telephone: (310) 557-2900 |
| | Facsimile: (310) 557-2193 |
| | **SIEBMAN, BURG, PHILIPS & SMITH LLP** |
| | Michael C. Smith |
| | Texas Bar No. 18650410 |
| | michaelsmith@siebman.com |
| | 113 East Austin Street |
| | Marshall, TX 75670 |
| | Telephone: (903) 938-8900 |

        Facsimile:   (972) 767-4620

ATTORNEYS FOR DEFENDANT
HEALTHCARE SERVICES GROUP, INC.

13

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 6th day of April 2015, the foregoing was filed electronically and is available for viewing on the Court's ECF system, which will send notification of such filing to the following:

Dorothy Ocker
Ocker Law Firm, PLLC
2340 East Trinity Mills Road
Suite 300
Carrollton, TX  75006
dmo@ockerlawfirm.com
Counsel for Plaintiffs

John T. Holleman
Holleman & Associates, P.A.
1008 West Second Street
Little Rock, AR  72201
jholleman@johnholleman.net
Counsel for Plaintiffs

Dated:  April 6, 2015                                             s/            *Robert Escalante*