IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SANDRA KELLY, JANICE WALTMAN, AND SYLVIA PATINO, INDIVIDUALLY & ON BEHALF OF OTHERS SIMILARLY SITUATED, <br><br>*Plaintiffs*, <br><br>v. <br><br>HEALTHCARE SERVICES GROUP, INC., <br><br>*Defendant*. | § § § § § § § § § § § § § § Case No 2:13-cv-00441-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Decertify Collective of Hourly Account Managers filed by the Defendant Healthcare Services Group (HSG) (Dkt. No. 233, Mot.). The Plaintiffs oppose the Motion (Dkt. No. 247, Resp.). For the reasons set forth below, the Motion is **GRANTED**.

## FACTUAL BACKGROUND

The Court already discussed much of the factual background applicable to this case in its Order denying the decertification of the salaried account managers. *See* (Memorandum Opinion and Order, Dkt. No. 287). The Court sees no benefit to revisiting the substantial background information outlined in that Order. Instead, the Court will now address the relevant facts pertinent to the present motion before the Court regarding hourly employees.

This is a motion to decertify the hourly class of account managers in a class action lawsuit brought under the Fair Labor Standards Act (FLSA). HSG's Motion concerns whether the hourly account managers that worked at HSG are similarly situated based on HSG's uniform policy of rounding clock-in and clock-out times to the nearest quarter-hour.

HSG does not dispute that all hourly account managers are subject to the same rounding policy regarding clock-in and clock-out times. HSG points to its corporate document outlining that policy. (Mot. at 3). That policy states:

> Employees are not permitted to punch in, sign in or begin work (In) seven (7) or more minutes before their scheduled start time, or seven (7) or more minutes after the end of their scheduled shift (Out), without the prior approval of their supervisor.
> Work time will be rounded based upon an employee's start (In) and stop (Out) time to the nearest quarter (1/4 or 15 minutes) of an hour.
> Employees must record their start (In) and stop (Out) quitting time each work day. In addition, employees must record their stop (Out) and (In) back to work after the meal period.
> If the start (In) time is seven (7) minutes or less before their scheduled starting time, then the next quarter hour will be used as the start (In) time. If the stop (Out) time is seven (7) minutes or less, after their scheduled quitting (Out) time, then the prior quarter hour will be used as the stop (Out) time.
> Supervisors are required to review work time and if employees fail to accurately record their work time, or record (In) or (Out) beyond the seven (7) minute rule, they must be counseled and disciplined as necessary.
> Quarter hours worked must be recorded daily on both time cards and payroll confirmation sheets and must be recorded as a percentage of one (1) hour. Example: 15minutes equals .25, 30 minutes equals .50 and 45 minutes equals .75.

(Policy on Rounding of Start (In) and Stop (Out) Work Times at 1, Dkt. No. 56, Ex. 32).

The Plaintiffs allege that that the above policy deprives hourly account managers of overtime pay or pay for time worked. Under the Plaintiffs' theory, "an employee who is never allowed to clock in before seven minutes early or clock out more than seven minutes after the shift is over will always be rounded down to zero, and the employee will always be underpaid for the work that they perform." (Resp. at 3). For example, an employee whose shift starts at 7:00 a.m. but who systematically clocks in and begins work at 6:53 a.m. will never be paid for that extra seven minutes of work because the system will always round the clock-in time up to 7:00 a.m. The same situation may occur during and after breaks as well as at the end of the shift. (Policy on Rounding of Start (In) and Stop (Out) Work Times at 1, Dkt. No. 56, Ex. 32).

HSG maintains that its rounding policy is legal under the FLSA. (Mot. at 4). Since HSG maintains records of the "actual" clock-in and clock-out times and the corresponding rounded times, HSG's expert calculated that the account managers were "actually paid for *more* time than they worked over the class period." (Mot. at 1); (Crandall Report ¶¶ 2–3 & n.1, Mot. Ex. 2 ("The time keeping records provided for my review contain the actual time an employee clocked-in or clocked-out and the nearest 15 minute interval the time clock-in or clock-out was rounded to.")). HSG alleges that the system resulted in *more* paid time because, for example, an account manager whose shift starts at 7:00 a.m. but who systematically clocks in and begins work at 7:07 a.m. will be paid for the seven minutes of work that the employee was not working because the system will always round the clock-in time down to 7:00 a.m. This same situation, too, may occur during and after breaks as well as at the end of the shift.

## LEGAL STANDARD

Under the FLSA, employees who bring suit may do so individually or as a collective action on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). FLSA collective actions operate on an "opt-in" basis in which potential class member must give affirmative notice of their consent to join the suit. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). One stated purpose of the collective action is to allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The Fifth Circuit "has never set a legal standard for collective-action certification." *Roussell v. Brinker Intern., Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) (unpublished) (citing *Mooney*, 54 F.3d at 1216). However, this Court, like many others in this circuit, follow the two-

step certification process for collective actions set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See, e.g.*, *Mooney*, 54 F.3d at 1213–14; *see also Lipnicki v. Meritage Homes Corp.*, 2014 WL 5620603, at *2 (S.D. Tex. Nov. 4, 2014) (Costa, J.); *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674 (W.D. Tex. 2014) (Sparks, J.). The first step, known as conditional certification, results in notice being provided to potential plaintiffs who can then choose to opt in. *Mooney*, 54 F.3d 1213–14. The standard for this initial notification phase is fairly loose, as it is "usually based only on the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1213; *Lipnicki*, 2014 WL 5620603, at *2.

After the opt-in period and discovery, defendants often move for decertification. This second step results in a more rigorous determination of whether the plaintiffs are similarly situated such that the action should be tried collectively. *Mooney*, 54 F.3d at 1214. To determine whether there is sufficient similarity, courts consider three relevant factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) (unpublished) (quoting *Mooney*, 54 F.3d at 1213 n.7); *Lipnicki*, 2014 WL 5620603, at *2.

## ANALYSIS

At this second stage, HSG raises a threshold dispute that has little to do with the factors outlined. HSG spends a significant portion of its brief arguing that the "Plaintiffs cannot show that they were subject to a common policy *that violated the FLSA*." (Mot. at 5 (emphasis added)). The Plaintiffs use the majority of its brief to argue that the issue of whether the policy violates the FLSA is not before the Court during the decertification stage. (Resp. at 5). The Court will first address this threshold question.

A.

To resolve the threshold issue of whether HSG's policy violates the FLSA, the Court must look to the facts that would be applied, and those facts and their ability to be fairly presented in a consolidated trial are what stand before the Court at this decertification stage. The question of whether HSG's rounding policy works a violation of the FLSA regulations is a question of fact. This contention is easily gleaned from the regulations: "For enforcement purposes this practice of [rounding] working time will be accepted, *provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked*." 29 C.F.R. § 785.48(b) (emphasis added). The Plaintiffs allege that the manner in which the system is used does not properly compensate the hourly employees: "Because employees are also expected to be on time to work and to remain on the job during work hours, an employee who is never allowed to clock in before seven minutes early or clock out more than seven minutes after the shift is over will always be rounded down to zero, *and the employee will always be underpaid for the work that they perform.*" (Resp. at 3 (citations omitted) (emphasis added)). Thus, HSG's assertion that its "rounding practice complies with Department of Labor regulations and is permitted under the FLSA[,] [s]pecifically, under 29 C.F.R. § 785.48(b)" is not de facto correct. (Mot. at 5). It requires an analysis of factual issues concerning (1) the manner in which the rounding policy was used, and (2) whether the rounding policy resulted in a failure to compensate employees properly for all the time they have actually worked.

B.

These underlying factual issues must be answered to resolve the Plaintiffs' claims.

Now, the Court turns to the factors to answer the question of whether the Plaintiffs have met their burden showing that opt-in account managers are similarly situated with regard to these factual issues.

1. *Factor 1: Disparate Factual and Employment Settings*

Under the first factor, "[s]everal courts have held that putative class members must show they were affected by a common policy, plan, pattern or practice in order to proceed collectively under Section 216(b) of the FLSA." *See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008) (collecting cases). There is no question that the Plaintiffs have shown that they all were affected by a common policy—a rounding policy that applies to all hourly employees no matter the factual or employment settings. (Hurlock Depo. 100:19–22, Resp. Ex. 1 (HSG's 30(b)(6) witness)).

However, Plaintiffs have failed to proffer evidence showing that the opt-in Plaintiffs are similarly situated regarding the factual question of whether the policy was used in such a way that it violates the FLSA. It is clear that an employee who is required to systematically clock in seven minutes early and clock out seven minutes late for every shift and break would be deprived of pay for time worked.[1] This may mean that the "practice of [rounding] working time" is "used in such a manner that it" results "over a period of time, in failure to compensate the employees properly for all the time that they have actually worked." 29 C.F.R. § 785.48(b).

Instead, in the Plaintiffs' attempt to meet their burden showing the above factual situation did occur, the Plaintiffs only cite to the timesheet of named Plaintiff Sandra Kelly. (Resp. at 3); (Example Timesheet at 1, Resp. Ex. 9). This does not meet the Plaintiffs' burden for two reasons. First, one Plaintiff's timesheet is insufficient to support a showing that all opt-in Plaintiffs are

---

[1] For example, an employee who clocks in seven minutes early twice a day (start of shift and after lunch break) and clocks out seven minutes late twice a day (end of shift and beginning of lunch break) may be deprived of up to twenty-eight minutes of pay each day.

6

similarly situated with regard to the factual question at hand. Second, the timesheet does not show that Sandra Kelly's clock-in and clock-out times were "always rounded down to zero" as the Plaintiffs allege. For example, in the third entry, it is clear that on April 11, 2012, Kelly clocked in at 13:05 (1:05 p.m.) and clocked out at 14:56 (2:56 p.m.). (*Id.*) The system credited Kelly with 2.00 hours of work for this period, (*id.*), presumably rounding her start time down to 1:00 p.m. and her end time up to 3:00 p.m. However, Kelly only worked one hour and fifty-one minutes (or 1.85 hours). The Court finds that in this respect the Plaintiffs have failed to meet their burden that the Plaintiffs are "similarly situated" with respect to this key factual question.

In addition, the Plaintiffs do not provide the Court with any factual support (either by testimony or a common, company-wide policy or plan) for the allegation that account managers were required to *actually* clock in to work before their shift began or to *actually* clock out after their shift ended. Instead, the Plaintiffs point to the rounding policy itself as a common policy, plan, or practice. However, that rounding policy cannot be enough to meet Plaintiffs' burden at the decertification stage, where "the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions."[2] *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (internal quotation marks omitted); *see also Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995) ("[T]he Court has much more information on which to base its decision, and makes a factual determination on the similarly situated question."), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). In other words, while the common rounding policy may have been sufficient at the conditional certification stage, it alone cannot bind the Plaintiffs' claims now. "Otherwise, it is

---

[2] At the conditional certification stage, the Court stated, "Given that HSG has conceded the existence of the common rounding policy applicable to all hourly paid [account managers], the Court is satisfied that similarly situated hourly [account managers] exist because they are all alleged victims of such rounding policy." (Memorandum Opinion and Order at 10, Dkt. No. 65).

7

doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Anderson*, 488 F.3d at 953.

Furthermore, the Plaintiffs proffered evidence of a common policy shows the opposite of what they needed to show to maintain collective certification; namely, that the Plaintiffs were required to clock in early or clock out late such that it resulted in a failure to compensate. Plaintiffs point to HSG's document that states: "You may clock in 7 minutes before/after the beginning/end of your shift without discipline." (HSG Staff Inservice Attendance Sheet at 2, Resp. Ex. 7). This common policy suggests that the account managers were under no requirement to clock in before their shift began or clock out after their shift ended. Further, there is no evidence on the record to the contrary. Without this "meaningful identifiable fact[] or legal nexus that bind the claims," the Court finds that this factor weighs against class certification. *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008).

2. *Factor 2: Individualized Defenses*

This factor overlaps substantially with the first. HSG's most basic defense is that the Plaintiffs were not underpaid. Without a common policy showing that the opt-in Plaintiffs were required to clock in early or clock out late, this defense is individual to each Plaintiff. Although HSG maintains records of the "actual" clock-in times and the corresponding times they were rounded to, HSG would have to present this evidence separately as to each opt-in Plaintiff. (Crandall Decl. ¶ 2 & n.1, Mot. Ex. 2).

In addition, even if Plaintiffs could show, collectively, that the opt-in Plaintiffs always clocked in to work early and clocked out late, to be eligible for an hourly wage during that extra seven minutes, the Plaintiffs must have actually been working during that extra seven minutes. Plaintiffs have presented no evidence that each time a Plaintiff clocked in early that the Plaintiff

immediately began work. It is possible, for example, that the Plaintiff clocked in early then went to the breakroom until his or her shift started. *See Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1128 (C.D. Cal. 2011) ("[T]he evidentiary record is devoid of evidence that [timesheet records] reflect time actually worked by Plaintiffs, as opposed to time Plaintiffs may have been present on Defendant's premises but not engaged in work activities."). HSG should be allowed to present individualized evidence of employee behaviors.

For these reasons, this factor weighs against class certification.

3. *Factor 3: Procedural Fairness and a Triable Plan*

As discussed, this case is not easily tried as a collective action. Whether the rounding policy violates the FLSA requires a factual inquiry into whether the policy was applied in such a manner that it actually resulted in unpaid work. This factual inquiry also resolves any particular Plaintiff's damages. Since this inquiry, as well as the individualized defenses, must be conducted for each Plaintiff, there is no efficiency gained by trying all the factual questions and defenses in one trial. This factor weighs against class certification.

C.

The above analysis is limited to the "rounding policy" claim. The parties have a dispute about whether the Plaintiffs have properly maintained an "off-the-clock work" claim. For example, HSG argues that "[t]his is not an off-the-clock case, Plaintiffs do not assert such claims, and the Court did not certify such claims." (Def.'s Reply at 5, Dkt. No. 257). Plaintiffs (citing to their complaint) argue they "have asserted off-the-clock claims from the inception of this litigation." (Pl.'s Sur-Reply at 4, Dkt. No. 260 (citing Pl.'s Original Compl. ¶ 20, Dkt. No. 1)); *see also* (Pl.'s Amended Compl. ¶ 31, Dkt. No. 186).

The Court did not conditionally certify the class based on the "off-the-clock" claim. In the Court's conditional certification, the Court stated, "Given that HSG has conceded the existence of the common rounding policy applicable to all hourly paid [account managers], the Court is satisfied that similarly situated hourly [account managers] exist because they are all alleged victims of such rounding policy." (Memorandum Opinion and Order at 10, Dkt. No. 65). The prior certification now before the Court was limited, for hourly employees, to HSG's rounding policy and nothing more.

Accordingly, the Court agrees with HSG in that the Court did not certify this as an off-the-clock case.

## CONCLUSION

The Court finds that the legality of HSG's rounding policy requires a factual determination and that the Plaintiffs have failed to present sufficient evidence that such factual situation is common to all Plaintiffs, such as is necessary to support continued class certification regarding hourly employees. In addition, the Court did not certify the hourly account managers' off-the-clock claims but only certified the rounding policy itself, as to hourly employees. Accordingly, HSG's Motion to Decertify the Hourly Class of Account Managers is **GRANTED**.

**So ORDERED and SIGNED this 1st day of June, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE