**STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT,
AND RELEASE PURSUANT TO SECTION 216(b) OF THE FLSA**

EXHIBIT
A

This Stipulation and Agreement of Compromise, Settlement, and Release Pursuant to Section 216(b) of the FLSA ("Settlement Agreement" or "Agreement") is made and entered into by, between, and among Plaintiffs Sandra Kelly, Janice Waltman, and Sylvia Patino Rousseau (collectively, "Named Plaintiffs" or "Plaintiffs"), individually and on behalf of the Settlement Class (as defined below in paragraph 2.17, including subparts), and Defendant Healthcare Services Group, Inc. ("Defendant" or "HSG"), subject to the approval of the Court, as provided below.  This Settlement Agreement is intended by all Parties to fully, finally, and forever resolve, discharge, and settle the lawsuit titled *Kelly et al. v. Healthcare Services Group, Inc.* (E.D. Tex. Case No. 2:13-cv-00441-JRG) ("the *Kelly* Litigation" or "Action") upon and subject to the terms and conditions hereof, as follows[1]:

1.      **Factual and Procedural History and Recitals.**

    1.1      HSG provides contracted housekeeping, laundry, and maintenance services to healthcare and rehabilitation facilities throughout the country. The Named Plaintiffs and putative members of the Settlement Class are current and former HSG housekeeping Account Managers ("AMs").

    1.2      On May 31, 2013, Named Plaintiffs filed the Kelly Litigation on behalf of themselves and other similarly situated HSG housekeeping AMs.  This lawsuit alleges that salaried AMs were misclassified as overtime exempt under the FLSA, and that hourly AMs were underpaid based on HSG's timesheet rounding practices.  The *Kelly* Litigation was conditionally certified as a collective action May 2, 2014, with two separate conditionally certified classes: one consisting of hourly AMs, and one consisting of salaried AMs.

    1.3      On March 10, 2015, HSG filed motions to decertify both classes.  The motion to decertify was granted on June 1, 2015 as to the class of hourly AMs, but the motion to decertify was denied as to the class of salaried AMs on May 18, 2015.

    1.4      After extensive motion practice and discovery, the Court ordered the Parties to proceed to mediation with mediator F. Witcher McCullough III. Prior to the mediation, the Parties exchanged extensive premediation discovery and disclosures, both formally and informally.  Class Counsel obtained and analyzed thousands of pages of time and payroll records for AMs, reviewed hundreds of thousands of emails, and deposed two HSG corporate representatives.  HSG also conducted a significant amount of written discovery along with over 80 class-member depositions.

---

[1] All Capitalized terms are defined throughout the Agreement.

1

1.5     The Parties formally mediated twice: first unsuccessfully on April 9, 2015; and again on June 17, 2015.  After the June 17, 2015 mediation, the Parties continued to negotiate the terms of a settlement, which are hereby memorialized in this Agreement.

1.6     Class Counsel represent that they have spent over two years thoroughly investigating the underlying facts, events, and issues related to the class claims against Defendant.  Class Counsel further represent that they have undertaken an extensive analysis of the legal principles applicable to the claims asserted against Defendant, and the potential defenses thereto, engaged the services of purported expert witnesses, and conducted a thorough review of written discovery including e-mails, employment records, and time and wage data. Both parties have had an opportunity to evaluate their respective positions on the merits of the claims and defenses asserted.

1.7     Class Counsel have also engaged in intensive arms-length negotiations with counsel for Defendant with a view toward achieving substantial benefits for the Settlement Class, including avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate review.

1.8     As a consequence of said negotiations, and of Class Counsel's investigation, analysis, and discovery, Named Plaintiffs, through Class Counsel, determined to enter into this Settlement Agreement on the terms and conditions hereinafter set forth, believing such Settlement to be fair, reasonable and adequate and in the best interests of Named Plaintiffs, and all current and purported members of the Settlement Class.  The Named Plaintiffs, through Class Counsel, have determined to execute this Settlement Agreement and urge approval by the Court of the proposed Settlement after considering (1) the factual and legal defenses available to Defendant to the claims asserted in the Action, which renders the outcome of the Action, at trial and on appeal, uncertain; (2) the potential difficulties Named Plaintiffs and the Settlement Class would encounter in establishing the elements of their claims at trial, as well as the possibility that the matter would be decertified at the close of trial or on appeal; (3) the substantial benefits that the members of the Settlement Class shall receive pursuant to the proposed Settlement; and (4) the fact that the proposed Settlement ensures that the members of the Settlement Class shall receive relief in the most expeditious and efficient manner practicable, and thus much sooner than would be possible were the claims to be litigated through trial and appeal.

1.9     Defendant vigorously denies each and every allegation of liability and wrongdoing that was asserted or could have been asserted by the Named Plaintiffs, and asserts that it has factual and legal defenses to all claims alleged in the Complaints, and that the claims brought by Named Plaintiffs on behalf of themselves and the Settlement Class are without merit.

2

Defendant further maintains that for any purpose other than settlement, the Action is neither suitable nor appropriate for collective action treatment pursuant to 29 U.S.C. § 216(b).  Nevertheless, without admitting any wrongdoing or liability whatsoever, Defendant agrees to the terms contained in this Agreement, provided that all of the Released Claims (as defined below in Paragraph 10, including subparts) are settled and compromised, in order to fully resolve all issues relating to the subject matter of the Action and to avoid adding to the substantial amounts of time, energy, and other resources that have been and, absent settlement, will continue to be devoted to the HSG's defense against the claims asserted by the Named Plaintiffs.  Defendant also concurs that the proposed Settlement is fair, reasonable, and adequate.

1.10   Counsel for the Parties agree that this Settlement does not create a common fund.

**NOW THEREFORE, in consideration of the covenants and agreements set forth herein, and of the release and dismissal of all Released Claims, Named Plaintiffs, on behalf of themselves and, as representatives on behalf of the Settlement Class, through Class Counsel, and Defendant, through Counsel for the Defendant, agree to the terms and provisions of this Settlement Agreement, subject to the approval of the Court, of all Released Claims under the following terms and conditions.**

2.    **Definitions**

As used herein, for the purposes of this Settlement Agreement only, the following terms shall be defined as set forth below:

2.1   "*Kelly* Litigation" or "Action" means the action titled *Kelly et al. v. Healthcare Services Group, Inc.* (E.D. Tex. Case No. 2:13-cv-00441-JRG).

2.2   "HSG" or "Defendant" means Healthcare Services Group, Inc., including any subsidiaries.

2.3   "Named Plaintiffs" or "Plaintiffs" means Sandra Kelly, Janice Waltman, and Sylvia Patino Rousseau.

2.4   "The Parties" or "Settling Parties" means HSG and the Named Plaintiffs.

2.5   "Claims Administrator" refers to Rust Consulting, who has been chosen by agreement of the Parties to administer the settlement in accordance with the terms of this Agreement and who will be paid by the proceeds of this Settlement.

3

2.6     "Class Counsel" refers to Dorotha Ocker of Chad West PLLC, and John Holleman, Timothy Steadman, Jerry Garner, and Matthew Ford, of Holleman and Associates, PA.

2.7     "Class Counsel Fees and Costs" means the attorneys' fees, expenses and costs incurred by Class Counsel and in an amount approved by the Court to be deducted from the Gross Settlement Amount as defined and apportioned as set forth in Paragraph 5, below.

2.8     "Class Counsel Notice" means the notice that is required by Section 3(a)(10) to be provided to all attorneys who will be recipients of any portion of the Class Counsel Fees and Costs, which notice shall be substantially in the form as set out in Exhibit B.

2.9     "Complaints" refers to the Complaint and Amended Complaint filed in the *Kelly* Litigation.

2.10    "Court" refers to the Eastern District of Texas, Hon. Rodney Gilstrap, U.S. District Judge, presiding.

2.11    "Service Awards" means the amounts to be paid to the Named Plaintiffs in recognition of their effort and work in prosecuting the Action on behalf of the Settlement Class, to be paid out of the Gross Settlement Amount, subject to the Court's approval.

2.12    "Fairness Hearing" means the hearing at or after which the Court shall make a decision as to whether the terms and conditions of the Class Counsel Fees and Costs are procedurally and substantively fair to Class Counsel.

2.13    "Fairness Hearing Date" means the date on which the Court conducts the Fairness Hearing.

2.14    "Approval Order" refers to the final order by the Court granting approval to the Settlement Agreement.

2.15    "Approval Order Date" refers to the date on which the Court enters an Approval Order in the *Kelly* Litigation, approving the Settlement and dismissing all Released Claims and the Action with prejudice.

2.16    "Final Effective Date" refers to the date on which the Approval Order is final.  If no appeal is taken from the Approval Order, then the Final Effective Date will be ten (10) business days after the time for filing an appeal has expired.  If an appeal is taken from the Approval Order, the Final Effective Date will be ten (10) business days after the appeal is withdrawn or after the final appellate decision or writ disposition affirming the Approval Order becomes final.

4

2.17 "Settlement Class" refers to all individuals, including the Named Plaintiffs, who opted in to the Salaried AM Class as defined by the Court's May 2, 2014 Order conditionally certifying that class, which is:

> All salaried Account Managers in the Housekeeping sector who worked for Healthcare Services Group, Inc., at any time from [May 29, 2011] to the present, excluding those who worked exclusively in Ohio, Pennsylvania, or Tennessee.

> Individuals who opted into the Hourly AM Class (as defined in the Court's May 2, 2014 Order), which was decertified pursuant to a Court Order dated June 1, 2015, but not into the Salaried Class, are not members of the Settlement Class.

2.18 "Gross Settlement Amount" refers to the total maximum settlement amount of Eight Million Dollars and no cents ($8,000,000.00) to be paid by Defendant in full satisfaction of all claims arising from or related to the Action.

2.18.1 Defendant will not pay out more than the Gross Settlement Amount. Payment by Defendant of the Gross Settlement Amount shall settle any and all claims, known or unknown, that the Named Plaintiffs may have against the Released Parties, as well as those claims that the Releasing Class Parties may have against the Released Parties, including but not limited to any claims pending in the *Kelly* Litigation or that could have been alleged in that action based on the same underlying factual allegations. Any monies paid shall not trigger any additional payment under any fund or plan maintained by the Defendant. The Gross Settlement Amount is the maximum amount that Defendant will pay under this Agreement and includes all Individual Settlement Payments, Service Awards, any interest incurred prior to the entry of final Judgment in this action, all employee FICA and payroll taxes arising from the Individual Settlement Payments, and Class Counsel Fees and Costs.

2.19 "Net Settlement Amount" refers to the portion of the Gross Settlement Amount remaining after deduction of Court approved Class Counsel Fees and Costs and Service Awards as described respectively in Paragraphs 5 and 6 below.

2.20 "Unopposed Motion to Approve FLSA Collective Settlement" refers to the motion to be prepared jointly by the Parties and submitted by Class Counsel to the Court to obtain approval of the Settlement and final certification of the Settlement Class.

7860/36660-009 current/50380276v8

2.21    "Released Claims" are those claims defined in Paragraph 10, including its subparagraphs.

2.22    "Settlement" refers to the Parties' agreement to fully and collectively resolve the claims of the Settling Parties in the Action pursuant to the provisions in this Settlement Agreement.

2.23    "Section 3(a)(10)" means Section 3(a)(10) of the Securities Act of 1933, 15 U.S.C. § 77c(a)(10).

3.    **Settlement Formula for Class Claims**

3.1    The Net Settlement Amount shall be distributed as follows:

3.1.1    The Parties will allocate the Net Settlement Amount to members of the Settlement Class based on each class member's total number of workweeks as a salaried Account Manager in the HSG housekeeping department during the time period beginning three years before that class member opted in to this lawsuit, and ending on the date which the Court preliminarily approves this settlement. Each class member is guaranteed a minimum payment of $100.00.

3.1.2    Workweeks will be calculated by the Claims Administrator based on HSG's employment records.  Any class member who believes his or her workweek calculation is incorrect may file a dispute with the Claims Administrator as set forth in Paragraph 4.2 below.

4.    **Form of Notice.**

4.1    The Net Settlement Amounts shall be distributed using a claims-made process.  To the extent the individual class member can be identified and/or contact information is maintained by the Parties, notice will be sent by mail to each member of the Settlement Class (as defined by Paragraph 2.17) who is eligible to make a claim to inform him or her of the Settlement, his or her ability to file a claim, and the claims being released. To be timely, completed Opt-in Claim Forms must be submitted and returned within forty-five (45) days of mailing.   A sample of the Opt-in Claim Form to be disseminated is attached as Exhibit A.  The cost of the notice process will be paid out of the Gross Settlement Amount, subject to possible reimbursement as described in Paragraph 9.

4.2    If a Class Member timely disputes, on a Claim Form, the number of his or her qualified workweeks, or as to the proper size of his or her claim, the Parties' counsel will make a good faith effort to resolve the dispute informally.  If counsel for the Parties cannot agree, the dispute shall be submitted to the Claims Administrator, who shall examine HSG's records and either verify the calculation or provide a corrected calculation.  If a Class Member contests the record review by the Claims Administrator, it

7860/36660-009 current/50380276v8

will be the Class Member's responsibility to supply information confirming the error in the calculation or the HSG records.  The Claims Administrator will make every effort to resolve any such disputes prior to final approval of this Settlement Agreement.

4.3     No later than ten (10) days time before the Fairness Hearing Date (or other period of time as determined by the Court), the Parties shall cause the Class Counsel Notice to be mailed by overnight mail, postage prepaid, to each Class Counsel that will receive any portion of the Class Counsel Fees and Costs. The Class Counsel Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Eastern District of Texas Local Rules, Section 3(a)(10), and any other applicable law, and shall otherwise be in the manner and form agreed upon by the Parties and approved by the Court.  A copy of the Class Counsel Notice, substantially in the form as set out in Exhibit B to this Settlement Agreement, shall be submitted to the Court for approval at the time the Parties submit this Settlement Agreement to the Court.

## 5.     **Class Counsel Fees and Costs.**

Defendant agrees not to oppose or impede any application or motion by Class Counsel for an award of attorneys' fees earned and litigation costs and expenses incurred by Class Counsel, not to exceed Three Million, Six Hundred Thousand Dollars ($3,600,000.00) or, if greater, the reasonable lodestar award; along with a reasonable sum of litigation costs and expenses actually incurred.  This sum includes all attorneys' fees, all costs of litigation, and all expenses incurred in prosecuting this claim.  All such fees, costs, and expenses will be paid out of the Gross Settlement Amount.  Class Counsel's fees and costs will be paid in the form of HSG common stock on the Share Issuance Date (as defined below),  provided that the issuance of such shares of HSG common stock shall be subject to the Court's approval of such issuance under Section 3(a)(10).  Class Counsel will further receive three (3) days of market protection against any change in price of the stock.  Thereafter, Class Counsel understands that the value of these shares may increase or decrease after the end of the market protection period, that they bear the risk of any change in price, and that under no circumstances will they be entitled to any additional shares after the initial issuance.

Consistent with the requirements of Section 3(a)(10), the Parties shall advise the Court at the time this Settlement Agreement is submitted to the Court that HSG will rely on the exemption found in Section 3(a)(10) in issuing common stock in payment of the Class Counsel Fees and Costs based on the Court's approval of that award as both procedurally and substantively fair to the recipients of the stock.  The Parties shall jointly request that the Court (i) find, before approving payment of the Class Counsel Fees and Costs, that the terms and conditions of the provisions of HSG common stock to Class Counsel are procedurally and substantively fair to the recipients of the common stock that HSG will issue; (ii) specifically address at the Fairness Hearing the procedural and substantive fairness of the Class Counsel Fees and Costs; (iii) find that the Class Counsel

7860/36660-009 current/50380276v8

Notice provides adequate notice to all recipients of the common stock that HSG shall issue pursuant to this Paragraph 5; and (iv) find that there were no improper impediments to the appearances at the Fairness Hearing of any recipients of the common stock that HSG shall issue.  Class Counsel agrees that they will be responsible for any taxes, brokerage fees, or any other fees related to or incurred as a result of the receipt, sale or transfer of this stock (subject to potential reimbursement pursuant to Paragraph 6).  No representations are made by HSG, any of the other settling parties or any of the counsel representing a settling party regarding Class Counsel's ability to resell the stock received if the Court approves the parties' request to have Class Counsel Fees and Costs paid via HSG common stock in accordance with Section 3(a)(10); other than that Class Counsel will have the ability to resell the stock within one business day of issuance, and that Class Counsel will receive three (3) days of market protection regarding the price of the stock.

In the event that the Court denies the motion for Class Counsel Fees and Costs or reduces the requested sums of Class Counsel Fees and Costs, the validity or enforceability of Settlement Agreement shall not be affected, and the portion of the attorneys' fees or costs not approved by the Court shall be used to pay any additional expenses or disputed claims described in Paragraph 9, including its subparagraphs, and thereafter distributed to the Class Members pursuant to the allocation described in Paragraph 3, including its subparagraphs.  However, if the Court does not approve the parties' request to have Class Counsel Fees and Costs paid via HSG common stock in accordance with Section 3(a)(10), HSG will have the authority, in its sole discretion, to declare this Settlement Agreement void and of no effect and to terminate the Settlement in accord with the provisions of Paragraph 18 herein, including its subparagraphs.

6.     **Service Awards to Named Plaintiffs.**

Class Counsel will request the Court approve Service Awards in an aggregate amount not to exceed Twenty Thousand Dollars and no cents ($20,000.00), to be distributed amongst each Named Plaintiff in recognition for their roles as Named Plaintiffs for the work they did in litigating this case and in further settlement of their claims.  Each Named Plaintiff shall be entitled to request a Service Award as follows:

- Janice Waltman:  $10,000

- Sylvia Patino Rousseau:  $10,000

Sandra Kelly will separately receive $25,000 as full and final settlement for her individual claims and shall be paid as specified in Paragraph 8 of this Settlement Agreement.  Defendant will not oppose these requests. The Claims Administrator shall issue an IRS Form 1099 to each Named Plaintiff in connection with the Service Award paid.  In exchange for the Service Awards (and, in Kelly's case, her individual settlement payment), the Named Plaintiffs shall release all claims, known or unknown, which they may have against the Released Parties, up to and including the date of preliminary approval, as set forth in Paragraph 10, including its subparagraphs.  Any portion of the Service Award not approved by the Court shall be used to pay any brokerage fees or related fees owed by Class Counsel resulting from the sale of stock pursuant to Paragraph

8

5, then to any disputed claims or additional expenses as agreed by the Parties and thereafter to a *cy pres* fund as described in Paragraph 9, including its subparagraphs.

7. **Timing of Payment for Claims, Service Awards, and Class Counsel Fees and Costs.**

7.1   Payment of eligible claims from the Net Settlement, Service Awards and Counsel Fees and Costs from the Gross Settlement Amount will be issued subject to the schedule set forth below in Paragraph 7.4, contingent upon entry of the Courts' Final Approval Order, and assuming that there is no appeal from any of the Final Approval Order.  If there is an appeal of the Final Approval Order, the first payment will be issued by Defendant to the Claims Administrator within fourteen (14) days after the final appellate order in the event that such date is later than the scheduled payment dates set forth below and all amounts scheduled to be paid pursuant to Paragraph 7.4 below shall be paid 180 days after the previous installment or on the third day of the following calendar quarter, whichever is sooner.

7.2   The allocation of the attorneys' fee award shall be as follows:  Thirty percent (30%) of the ultimate amount of fees awarded shall be allocated to Dorotha Ocker of Chad West PLLC.  Seventy percent (70%) of ultimate amount of fees awarded shall be allocated to Holleman and Associates, PA.

7.3   Any award of litigation costs and expenses will be paid separately to the counsel who actually incurred those litigation costs or expenses, and will not be subject to the allocation set forth in the preceding subparagraph.

7.4   Defendant will pay the Gross Settlement Amount (1) in installments, by delivering a check or wire transfer to the Claims Administrator in the amounts and dates specified below, and (2) by delivering HSG common stock, in a lump sum by transfer to a brokerage account designated by Class Counsel on the date specified below, as follows:

7.4.1   <u>Funding of Payments to Members of the Settlement Class</u>. Fifty percent (50%) of the amount ultimately allocated to members of the Settlement Class, to be paid within 45 days of the Final Effective Date of this Action.  Within fourteen (14) days after receipt of this payment, the Claims Administrator will issue the appropriate checks to the Settlement Class.  The Claims Administrator will also issue any W-2 or 1099 Forms as appropriate.

7.4.2   Fifty percent (50%) of the amount ultimately allocated to members of the Settlement Class, to be paid within 180 days of the date of the first payment made under Paragraph 7.4.1.  Within fourteen (14) days after receipt of this payment, the Claims Administrator

9

will issue the appropriate checks to the Settlement Class.  The Claims Administrator will also issue any W-2 or 1099 Forms as appropriate.

7.4.3   The payment of these funds to the Claims Administrator according to the above schedule shall extinguish HSG's obligation with respect to the Settlement Class.  It is the responsibility of the Claims Administrator to ensure that accurate payments are made to the Settlement Class in a timely manner.

7.4.4   <u>Class Counsel Fee Dates and Procedure</u>.  Subject to the terms and conditions set out in Paragraph 5 of this Settlement Agreement, and subject to the Court's approval under Section 3(a)(10), HSG shall cause to be issued in shares of HSG common stock the Class Counsel Fees and Costs, provided that such issuance shall be subject to the following conditions:

7.4.4.1 The Parties shall request that the Court schedule a Fairness Hearing at which to consider whether the terms and conditions of the Class Counsel Fees and Costs are procedurally and substantively fair to Class Counsel.  If the Court enters an Approval Order, the Parties shall jointly ask the court to enter an [Order Approving Class Counsel Fees and Costs] substantially in the form attached as Exhibit C.  Any Class Counsel who will receive any portion of the Class Counsel Fees and Costs approved by the Court may appear at the Fairness Hearing and be heard by the Court regarding whether the terms and conditions of the stock award are procedurally and substantially fair to the counsel who will receive the stock.

7.4.4.2 Payment of Class Counsel Fees and Costs will be made in the form of HSG common stock, by delivering the shares of common stock into a brokerage account designated by Class Counsel the same day as the first payment (the "Share Issuance Date").  Class Counsel will designate a brokerage account no later than ten (10) business days prior to the Share Issuance Date.

7.4.4.3 The HSG common stock price on the business day following the Final Effective Date will be used for the calculation of the amount of stock to be issued (the closing price on that day (the "Calculation Price").  It may take up to three business days to issue the stock from that date, therefore, on the third day (or sooner) HSG will deliver shares of the stock whose valuation, according to the Calculation Price, equals the Class Counsel Fees and Costs

10

as approved by the Court.  To the extent that the price of the stock on the day of issuance is less than the Calculation Price, HSG will issue additional shares as necessary to make up the difference.  HSG will guarantee that the Calculation Price equals the Class Counsel Fees and Costs as approved by the Court for three days after receipt or until the stock is tradable, whichever occurs first.  (For the avoidance of doubt, the "previous close" is the previous trading day's last reported trade price reported by the NASDAQ Global Select Market during official trading hours).

7.4.4.4 The Class Counsel Fees and Costs shall be the sole aggregate compensation for Class Counsel.

7.5 <u>Uncashed Individual Settlement Payments</u>.  Settlement checks not cashed by a member of the Settlement Class within one hundred twenty-five (125) days of mailing shall be void, and the failure to cash any check shall in no way affect the binding nature of the Settlement or the binding nature of any release.

7.5.1 The Parties will work together in making good-faith efforts to locate the Named Plaintiffs and Opt-ins during the 125 days. The Claims Administrator will notify HSG and Class Counsel when the checks are mailed. The Claims Administrator will send Class Counsel a list of all outstanding checks with the class members' name and the amount of the outstanding check ninety (90) days after the checks are mailed.

7.5.2 On the one hundred twentieth (120) day after the checks are mailed, the Claims Administrator will send Class Counsel a list of the outstanding checks with the class members' name and the amount of the outstanding check.

7.5.3 Any funds not claimed by the Settlement Class because of a failure to cash the check within one hundred twenty-five days (125) of receipt will be used first to pay disputed claims deemed payable, second, additional expenses and third, distributed to a *cy pres* recipient in accordance with Paragraph 9, including its subparagraphs.

8. **Tax Treatment.**

8.1 Each payment made from the Net Settlement Amount based on any claim, whether by a Named Plaintiff, including Sandra Kelly, or Opt-in, shall be divided as follows:

11

    a.    50% of the gross amount paid on each claim will be paid as lost wages and an IRS Form W-2 will be issued for the payment (the employer's portion of the FICA and other taxes will be paid by Defendant, unless otherwise paid in accordance with Paragraph 9, including its subparagraphs); and

    b.    50% of the gross amount paid on the claim will be paid as compensation for liquidated damages and a Form 1099 will be issued for the payment.

8.2    Should any government authority determine that all or any part of the payment(s) made under a Form 1099 to any member of the Settlement Class are taxable as wages, the member will be solely responsible for the payment of all such taxes that are assessed.

8.3    Defendant makes no representations and it is understood and agreed that the Defendant has made no representations as to the taxability of any payments pursuant to this Settlement Agreement, including all payments to the Settlement Class, including the Named Plaintiffs and all payments or stock issuances to Class Counsel.  Each Named Plaintiff and Class Member is advised to seek his or her own personal tax advice.

## 9.    Unclaimed Funds to Disputed Claims, Taxes and *Cy Pres*.

9.1    Any *cy pres* funds will be allocated fifty percent (50%) to a charity selected by Plaintiffs, and fifty percent (50%) to a charity selected by Defendant.

9.2    Any and all portions of the Net Settlement Amount not claimed as described above, shall first be used to pay any disputed claims, then additional expenses as agreed by the Parties, and thereafter to a *cy pres* fund as described in subparagraph 9.1 above.

9.3    "Additional expenses" as used in this paragraph shall mean the Defendant's portion of the Mediator's fees and costs, any fees or costs charged by the Claims Administrator, any brokerage fees paid by Class Counsel related to the transfer of HSG stock (if approved by the Court), and Defendant's portion of the FICA and other employment taxes related to the Settlement of the *Kelly* Litigation.

9.4    The order of preference will be to pay any disputed claims first (subject to approval by all Parties) and then the additional expenses.  After any disputed claims are resolved, any remaining unclaimed funds shall be used first to address the cost of the Mediator (split between the Parties), and if any unclaimed funds remain thereafter, the cost of the Claims Administrator, and if any unclaimed funds remain thereafter, to any brokerage fees paid by Class Counsel related to the transfer of HSG stock (if approved by the Court), and if any unclaimed funds remain thereafter,

to Defendant's portion of the FICA and other employment taxes related to the Settlement of the *Kelly* Litigation.  Any remaining funds will be paid to the *cy pres* recipients.

10.  **Released Claims.**

10.1   Upon final approval of this Settlement Agreement, Named Plaintiffs on their own behalf and as the Named Representatives, all members of the Settlement Class, and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Class Parties") hereby forever completely and irrevocably release and discharge Defendant, along with any of its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, and assigns, and each of their officers, directors, board members, trustees, shareholders, members, employees, agents, attorneys, auditors, accountants, benefits administrators or third party administrators, experts, contractors, stockholders, representatives, partners, insurers, reinsurers, and other persons acting on their behalf (collectively, the "Released Parties"), from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses resulting from unpaid wages, minimum wages, unpaid overtime, liquidated damages, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefit claims on account of unpaid wages and/or overtime, interest, attorneys' fees, holiday pay, sick pay, reimbursement for any travel or other expenses, meal and rest period compensation, day of rest claims, accrued vacation pay, breach of fiduciary duty, and any right or claim for civil penalties, any claim arising in contract or quasi-contract and related to the payment of wages, that any of the Releasing Class Parties have or may have had against any of the Released Parties arising out of the acts, facts, transactions, theories, occurrences, representations, or omissions set forth, or which could have been set forth, given the stated predicate allegations in the Complaint or Amended Complaint filed in the *Kelly* Litigation, and including any claim arising out of or under the Fair Labor Standards Act, any state or local wage payment law or ordinance, or any other claim arising out contract, quasi-contract, tort, breach of fiduciary duty, or other common law claim, as well as any other state or local statute, rule and/or regulation, or similar causes of action arising from or relating to the non-payment of wages alleged in the above referenced Complaints, (the "Released Claims") through the time of Final Approval Order.

13

10.2   It is expressly acknowledged and agreed that the Released Claims set forth above by the Releasing Class Parties shall not include a release or waiver of any claims under any federal, state, municipal or other statutes or ordinances not expressly released in the immediately preceding paragraph above including, but not limited to, claims for damages, equitable relief, attorney fees, costs and the like under Title VII of the Civil Rights Act of 1964, as amended; the Americans with Disabilities Act, as amended; the Family and Medical Leave Act, as amended; and the Age Discrimination in Employment Act, as amended, and any common law actions relating to wrongful or retaliatory discharge, negligence, malfeasance, mistreatment, civil conspiracy, defamation, intentional or negligent infliction of emotional distress, tort, personal injury, or invasion of privacy.

10.3.   Upon final approval of this Settlement Agreement, the Named Plaintiffs and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Service Award Plaintiff Parties") hereby additionally, forever, completely and irrevocably release and discharge the Released Parties, from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses of any kind or nature, whether known or unknown, without any limitation whatsoever, that any of the Releasing Service Award Plaintiff Parties have or may have had against any of the Released Parties (the "Released Service Award Plaintiffs Claims") through the date of preliminary approval of this settlement.

10.4   <u>Prohibition on Subsequent Assertion of Released Claims</u>.  Named Plaintiffs, and to the fullest extent allowed by law, all Releasing Service Award Plaintiff Parties and Releasing Class Parties, are prohibited from ever asserting a Released Claim and from commencing, joining in and from soliciting, encouraging, urging, or recommending that any other person (including HSG employees or former employees) commence or join any lawsuit or adversary proceeding against the Released Parties, or any of them, based on any Released Claims.  Excluded from this prohibition are any instances where any individual is legally compelled to testify through service of a subpoena, court order or other process.

10.5   <u>Covenant Not to Sue</u>.  Named Plaintiffs, and to the fullest extent allowed by law, all Releasing Service Award Plaintiff Parties and Releasing Class Parties, covenant and agree not to ever assert a Released Claim or to commence, join in, or voluntarily assist in a lawsuit or adversary proceeding against the Released Parties, or any of them, arising out of or regarding the Released Claims.

14

10.6   <u>No Assignment of Rights</u>.  Named Plaintiffs and all Releasing Service Award Plaintiff Parties and Releasing Class Parties warrant and represent that they have not assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate to any person or entity any of the Released Claims or any rights, claims, or causes of action arising therefrom.  This warranty and representation of non-assignment shall survive the execution of this Settlement Agreement and the dismissal of the Action.  No Settlement payment shall be paid to any person or entity with respect to whom the Plaintiff as Named Representative and/or any Releasing Service Award Party or Releasing Class Party has assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate any of the Released Claims or any rights, claims, or causes of action arising out of the Released Claims.  In addition, Plaintiffs and Releasing Service Award Plaintiff Parties or Releasing Class Parties shall defend, hold harmless, and indemnify the Released Parties, or any of them, from and against any claims, damages, litigation, causes of action, and expenses, including reasonable attorneys' fees, resulting from any breach by a Named Plaintiff or any other Releasing Service Award Party or Releasing Class Party of this warranty and representation, or any breach by Plaintiff or any other Releasing Service Award Party or Releasing Class Party of their release of the Released Claims.

10.7   Notwithstanding this Paragraph or any other provision within this Settlement Agreement, the Parties retain and reserve all rights, procedures and remedies available to enforce this Settlement Agreement, and nothing herein, except jurisdiction, venue, and choice-of-law provisions, shall abridge or otherwise limit the rights, procedures and remedies available to the Parties in enforcing this Settlement Agreement.

11.   **No Impact on Employee Benefit Plan, Policy or Bonus Program.**

Defendant contends that the amounts paid under this Settlement Agreement will not affect any previously credited hours of service under any employee benefit plan, policy or bonus program sponsored by Defendant.  To the extent permitted by the terms of any such plans as such exist at the time of the payment, the amounts paid under this Settlement Agreement will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under, Defendant-sponsored (self-insured or not) employee benefit plans, policies or bonus programs.  Any payments made under the terms of this Settlement Agreement shall not be applied retroactively, currently or on a going forward basis as salary, earnings, wages, or any other form of compensation for the purposes of any employee benefit plan, policy or bonus program.  Defendant retains the right to modify the language of its employee benefit plans, policies and bonus programs to effect this intent and to make clear that any amounts paid pursuant to this Settlement Agreement are not for "hours worked," "hours paid," "hours of service," or any similar measuring term as defined by applicable plans, policies and bonus programs for the purpose of eligibility, vesting, benefit accrual or any other purpose, and that additional contributions or benefits are not required by this Settlement Agreement.  Neither

15

Defendant nor Plaintiffs are opining on the terms of any such plan, each of which speaks for itself.

12.    **Severability.**

The Settling Parties agree that the provisions of Paragraphs 5 and 6, including subparagraphs, of this Settlement Agreement are severable from the remainder of the Settlement Agreement.  Any denial or reduction in amount by the Court of the application for Class Counsel Fees and Costs or Service Awards shall in no way affect the validity and effect of the remainder of this Settlement Agreement.

13.    **Limitation on Costs and Fees.**

Except as provided in this Settlement Agreement, Defendant and Class Counsel shall not be required to pay any other expenses, costs, damages or fees incurred by Named Plaintiffs or any member of the Settlement Class, or by any of their attorneys, experts, advisors, agents or representatives relating to this Action, or the Claims Administrator.  Any award of attorneys' fees, costs, expenses and damages payable hereunder to Class Counsel shall be in complete satisfaction of any and all claims for such attorneys' fees, costs, expenses and damages, liquidated damages, penalties under state or federal law, which Named Plaintiffs, the Settlement Class, Class Counsel, or any other counsel have or may have against Defendant arising out of or in connection with the Action and this Settlement, including, but not limited to, any claims for attorneys' fees, costs and expenses involved in litigating the Action and in negotiating and implementing this Settlement Agreement, including attorneys' fees, costs and expenses incurred through and after the final disposition and termination of the Action.  After Defendant funds the Gross Settlement Amount in accordance with Paragraph 7 (including its subparagraphs), Defendant shall not be responsible for distributing or apportioning any award of attorneys' fees and expenses, and Class Counsel shall defend, hold harmless, and indemnify Defendant and its counsel, or any of them, from and against any claims, damages, litigation, causes of action, and expenses, including reasonable attorneys' fees, resulting from any action, proceeding, or claim initiated by Class Counsel, involving the apportionment of the award of attorneys' fees, costs, or expenses among the Named Plaintiffs, the Settlement Class, and Class Counsel.

14.    **Persons Who Do Not Opt in.**

Defendant and Class Counsel shall not be responsible to any putative member of the Settlement Class who does not opt in to the Settlement Agreement, as outlined herein, for any such individual's claims, attorneys' fees, costs, or expenses of any kind.

15.    **Applications for Approval Order.**

On or before August 14, 2015, the Settling Parties hereto shall jointly move the Court for preliminary approval of the Settlement, pursuant to Section 216(b) of the Fair Labor Standards Act.

16.   **Effective Date.**

This Settlement Agreement is subject to and conditioned upon the following criteria being met:

(1)   Court approval of Plaintiffs' Unopposed Motion to Approve FLSA Collective Settlement; and

(2)   The final resolution of any and all appeals in the Action.

In the event that either of these conditions are not met, this Settlement Agreement shall be voidable in its entirety, by either of the Parties upon written notice to the other party.  Any denial or reduction in amount by the Court of the application for Class Counsel Fees and Costs or Service Awards shall not be grounds for declaring the Agreement void and will in no way affect the validity and effect of the remainder of this Settlement Agreement.

17.   **Finality; Effect of the Settlement Not Being Final.**

17.1   <u>Finality</u>.  Court approval of this Settlement shall be considered final once the Final Effective Date has passed.  Except as expressly stated herein, none of the obligations of Defendant pursuant to the Settlement Agreement shall become effective until the Settlement becomes final, but Defendant may waive this condition in writing.

17.2   <u>Effect of Settlement Not Being Final</u>,  In the event that the Settlement as provided for in this Settlement Agreement does not become final or is voided by either party under the provisions of Paragraphs 16 or 18 herein, or by HSG if the request to pay Class Counsel Fees and Costs via stock is denied, or does not become effective for any reason other than the failure of any Party to perform such Party's obligations hereunder (except as to the Settlement not becoming final because of any appeal, which circumstance can be waived by Defendant), then the Settlement Agreement shall become null and void and of no further force and effect, and all negotiations, proceedings, and statements relating thereto shall be without prejudice as to the rights of any and all Parties hereto and their respective predecessors and successors, and all Parties and their respective predecessors and successors shall be deemed to have reverted to their respective positions in the Action as of the date and time immediately prior to the execution of this Settlement Agreement, and except as otherwise expressly provided herein.  In such a circumstance, Defendant reserves all rights and defenses which it had prior to the signing of this Settlement Agreement.

18.   **Settlement Termination.**

18.1   In the event that (a) the Court declines to enter an Approval Order or to enter the Judgment or any part thereof as provided for herein, or the

17

Settling Parties hereto fail to consent to the entry of alternative forms of Judgment, in lieu thereof, or after such consent the Court declines to enter such alternate form of Judgment; or (b) any conditions to the Settlement are not satisfied; or (c) the Court disapproves this Settlement, or any term contained in this Settlement Agreement, (with the sole exception of a the Court order reducing the amount of Class Counsel Fees and Costs and/or Service Awards awarded), including any proper and lawful amendments hereto, and such disapproval becomes final by reason of its affirmance on appeal or lapse of time or otherwise; or (d) if the Court does not approve the parties' request to have Class Counsel Fees and Costs paid via HSG common stock in accordance with Section 3(a)(10), and HSG exercises its discretion to terminate this Settlement Agreement; or (e) the Court approves this Settlement, including any proper and lawful amendments hereto, but any such judgment and approval is finally reversed on appeal, then, in any such event, this Settlement shall be voidable in its entirety by either of the Parties upon written notice to the other party, and the Approval Order may be vacated upon application to the Court.

18.2    In such event, (a) this Settlement Agreement and the Settlement shall be terminated and become void and of no effect; (b) any action taken or to be taken in connection with this Settlement Agreement and the Settlement shall become null and void and of no effect, (c) this Settlement Agreement and the Settlement and any hearings or proceedings thereunder shall not be referred to or used as evidence for or against any party or any member of the Settlement Class in these or any other action or proceeding, and (d) all pre-trial proceedings shall resume thirty (30) calendar days thereafter, and the Parties shall otherwise proceed as if this Settlement had not been proposed for approval of the Court.  In the event that any monies or shares of HSG common stock for attorneys' fees, costs, and expenses have been paid or issued to Class Counsel or any monies for an enhancement or settlement payment have been paid to the Named Plaintiffs, Class Counsel and the Named Plaintiffs agree to immediately return such monies, shares of HSG common stock, or monies received upon sale of such shares of HSG common stock within ten (10) calendar days of the aforementioned termination.

19.     **No Admissions.**

The Settling Parties understand and agree that this Settlement Agreement is the result of a good faith compromise settlement of disputed claims, and no part of this Settlement Agreement or any conduct or written or oral statements made in connection with this Settlement and this Settlement Agreement, whether or not the Settlement is finally approved and/or consummated, may be offered as or construed to be an admission or concession of any kind by Defendant or any of the Releasing or Released Parties or anyone else.  In particular, but without limiting the generality of the foregoing, nothing about this Settlement Agreement shall be offered or construed as an admission of liability, wrongdoing, impropriety, responsibility, or fault whatsoever on the part of

18

Defendant and/or the Released Parties, and it shall not be construed as or deemed to be evidence of, or an admission or concession that the Named Representative or any member of the Settlement Class has suffered any damage.  In addition, this Settlement Agreement shall not be offered or be admissible in evidence against Defendant or any Released Party, except in any action or proceeding brought by or against a Named Plaintiff, a member of the Settlement Class, or Defendant to enforce its terms; or by Defendant in defense of any claims brought by a Named Plaintiff, a member of the Settlement Class, or any member of the general public.  The provisions of this paragraph shall become effective when this Settlement Agreement is signed and shall be binding on the Settling Parties and their counsel regardless of whether the Settlement Agreement is approved or terminated for any reason, or rendered null and void.

20.     **Publicity.**

Named Plaintiffs, and all members of the Settlement Class, agree not to excessively publicize the Settlement or the *Kelly* Litigation.  Specifically, while they may generally refer to the Action as a settlement of an FLSA collective action, they may not mention the amount of settlement or identify HSG as the Defendant.  They further agree that they will not contact the media, nor comment publicly, including but not limited to communications through any social media regarding this matter.  If contacted, they will respond to any inquiries solely by stating that the matter has been resolved to the satisfaction of all Parties.

Class Counsel agrees not to publicize the Settlement or the *Kelly* Litigation whatsoever prior to entry of final Judgment; and to remove all reference to HSG, the Settlement, or the *Kelly* Litigation from their websites pending entry of final Judgment.  After entry of final Judgment, Class Counsel agrees not to excessively publicize the Settlement or the *Kelly* Litigation, and, specifically, not to use HSG's name, logo, or trademark (or any other identifying information) when referring to this Settlement or the *Kelly* Litigation.

21.     **Extensions of Time.**

Unless incorporated into an Order of the Court, the Settling Parties hereto may agree in writing to reasonable extensions of time to carry out any of the provisions of the Settlement without further order of the Court.

22.     **Force Majeure.**

The failure of any party to perform any of its obligations hereunder shall not subject such party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by acts of God, fires, earthquakes, other natural disasters, explosions, floods, wars, sabotage, or terrorist acts beyond the reasonable control of such party.

23.     **Construction.**

This Settlement Agreement was entered into after substantial good faith, arms-length negotiations between the Settling Parties' counsel.  This Settlement Agreement is

entered into freely and voluntarily only after each party had carefully read and reviewed it with counsel, and it reflects the conclusion of each party that this Settlement Agreement, Order approving the same, and the respective Judgment; along with the releases, waivers, and covenants contemplated and accepted herein are in the best interest of said party.  This Settlement Agreement has been entered into without any coercion and under no duress.  The Settling Parties acknowledge and agree that all Parties had an equal hand in drafting this Settlement Agreement so that it shall not be deemed to have been prepared or drafted by one party or another.  All Parties agree that the Settlement Agreement should be interpreted without reference to any canon of construction providing that any ambiguity in a contract must be construed against the drafter.  Except as expressly provided herein; this Settlement Agreement is not intended to confer any rights or remedies upon any person other than the Settling Parties.

24.     **Due Authority of Attorneys.**

Each of the attorneys executing this Settlement Agreement on behalf of one or more Parties hereto warrants and represents that he or she has been duly authorized and empowered to execute this Settlement Agreement on behalf of each such respective party and to bind them to the terms hereof.

25.     **Integration Clause.**

This Settlement Agreement (including all Exhibits annexed hereto) sets forth the entire agreement of the Settling Parties with respect to its subject matter and supersedes any and all other prior agreements and all negotiations leading up to the execution of this Settlement Agreement, whether oral or written, regarding the subjects covered herein. The Settling Parties acknowledge that no representations, inducements, warranties, promises, or statements relating to the subjects covered herein, oral or otherwise, have been made by any of the Settling Parties or by anyone acting on behalf of the Settling Parties which are not embodied or incorporated by reference herein, and further agree that no other agreement, covenant, representation, inducement, promise or statement relating to the subjects covered herein not set forth in writing in this Settlement Agreement, shall be valid or binding,

26.     **Modification or Amendment.**

This Settlement Agreement may not be modified or amended except in a writing signed by all signatories hereto or their successors in interest.

27.     **Return of Documents/Data**

Class Counsel agrees to return or destroy all documents and data produced by Defendant, including deleting any and all electronic documents or data produced by Defendant, within sixty (60) calendar days of the Final Effective Date, including all documents produced subject to any Protective Order in the Action or pursuant to the mediation privilege.  Class Counsel will advise Defendant's Counsel in writing once this data has been returned or destroyed.  Nothing in this paragraph is intended to contradict any rules set forth in the Texas Disciplinary Rules of Professional Conduct or the

20

Arkansas Rules of Professional Conduct, including any rules requiring retention of client files.  Notwithstanding that limitation, Class Counsel agrees to maintain any such retained records or other documents as confidential and not to use them for the purposes of any other litigation or threatened litigation against any of the Released Parties.

28.     **Deadlines Falling on Weekends or Holidays.**

To the extent that any deadline set forth in this Settlement Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

29.     **Successors.**

This Settlement Agreement shall be binding upon and inure to the benefit of the Settling Parties hereto (including members of the Settlement Class) and their respective spouses, heirs, executors, administrators, successors and assigns, and upon any corporation, partnership or other entity into or with which any Settling Party hereto may merge, combine or consolidate.  As used in the preceding sentence and elsewhere throughout this Settlement Agreement, "including" shall mean including without limitation.

30.     **Counterparts.**

This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  Facsimile or other electronic transmission of the signatures of the Settling Parties or their representatives shall be binding on the Settling Parties.

31.     **Waivers.**

The waiver by any Party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

32.     **Governing Law.**

This Settlement Agreement shall be governed by and construed, enforced, and administered in accordance with the internal laws of the State of Texas, without regard for the law of the State regarding conflicts of laws or choice of law.  Any orders or judgments entered by the Court in conjunction with the proceedings relating to or arising out of this Settlement Agreement shall be construed and enforced under federal law, and/or the law of the state wherein the action was filed, and all issues relating to the preclusive effect of such orders or judgments shall be determined by the laws relating to the construction, enforcement, and preclusive effect of orders and judgments entered by federal courts.

33.   **Continuing Jurisdiction.**

To the extent allowed by law, the Court will retain continuing jurisdiction over the Action for a reasonable time for the purpose of implementing, interpreting, or enforcing the Settlement Agreement, the Final Approval of the Settlement, entry of Judgment, and post-judgment issues, until all related matters are fully resolved.  Any dispute regarding the Settling Parties' obligations pursuant to this Settlement Agreement and/or interpretation of the terms of this Settlement Agreement will be presented by written motion to, and resolved by, the Court.

34.   **Regulation.**

In the event that any provision in this Settlement Agreement shall be affected by any rule, regulation, ordinance, order, directive, or statute by any unit of government, whether state, federal, or local, such rule, regulation, ordinance, order, directive, or statute shall supersede and take precedence over any such provision of this Settlement Agreement to the contrary and in no event shall any Settling Party be in violation of this Settlement Agreement nor shall this Settlement Agreement be in any way affected should any Settling Party take any action or change any of its business practices to comply with such state, federal, or local rules, regulations, ordinances, or statutes currently in force or enacted in the future.

35.   **Headings.**

The headings contained in this Settlement Agreement are for convenience and reference purposes only, and shall not be given weight in its construction.

36.   **Mutual Full Cooperation**

The Parties will fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to the preparation and execution of documents necessary to implement the Settlement Agreement.  The Parties will use their best efforts to effectuate this Settlement Agreement, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

37.   **No Rescission On Grounds Of Mistake.**

The Settling Parties acknowledge that they have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so.  Therefore, the Settling Parties agree that they shall not seek to set aside any part of the Settlement Agreement on the grounds of mistake.  Moreover, the Settling Parties understand, agree, and expressly assume the risk that any fact not recited, contained, or embodied in the Settlement Agreement may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that the Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

38.   **Notices.**

Any notices, requests, demands, or other communications required or permitted to be given pursuant to this Settlement Agreement shall be in writing and, except as provided elsewhere in this Settlement Agreement or in any communication to the members of the Settlement Class, shall be delivered personally, via overnight delivery or via postage pre-paid first class mail, as follows: to the Settlement Class, Named Plaintiffs, and Class Counsel to the attention of:

> John Holleman
> Holleman and Associates, PA
> 1008 West Second St.
> Little Rock, AR 72201
>
> Dorotha Ocker
> Chad West PLLC
> 3606C S. Tyler Street
> Dallas, TX 75224

and to Defendant and counsel for Defendant to the attention of:

> Kenneth D. Sulzer
> Proskauer Rose LLP
> 2049 Century Park East, Suite 3200
> Los Angeles, CA 90067-3206

By written notice given in accordance herewith, each party may modify or change the addressee and/or address of any person identified above or pursuant hereto as the person or persons to whom all future notices shall be sent.

39.   **Signatures of Named Plaintiffs, Defendant, Defendant's Counsel and Class Counsel.**

Named Plaintiffs, Defendant, Defendant's Counsel and Class Counsel indicate by signing below their approval of the form of this Settlement Agreement (including all Exhibits annexed hereto), and, in the case of counsel for Named Plaintiffs and the Settlement Class, their representation and warranty of authority to bind the Settlement Class as certified (subject to the final approval of the Court).  They further agree that they have been given adequate time to review and consider this Agreement, to discuss it with their attorneys, and to decide whether or not to sign it.

40.   **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court.

41.     **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party.  The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF**, this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:


Dated: August  __, 2015                    By:_____
                                           Sylvia Patino Rousseau


Dated: August __, 2015                     By:_____
                                           Janice Waltman


Dated: August __, 2015                     By:_____
                                           Sandra Kelly


Dated: August __, 2015                     By:_____
                                           John Holleman
                                           Holleman and Associates, PA
                                           Counsel for Named Plaintiffs and
                                           the Settlement Class


Dated: August __, 2015                     By:_____
                                           Dorotha Ocker
                                           Chad West PLLC
                                           Counsel for Named Plaintiffs and
                                           the Settlement Class


Dated: August, 2015                     By:_____
                                        Healthcare Services Group, Inc.


Dated: July  __, 2015                   By:_____
                                        Kenneth D. Sulzer

24

Proskauer Rose LLP
Counsel for Defendant
Healthcare Services Group, Inc.

7860/36660-009 current/50380276v8

**EXHIBIT A**

CLASS NOTICE AND OPT-IN CLAIM AND CONSENT FORM

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

**Notice of Collective Action Settlement for Current and Former
Healthcare Services Group, Inc. Account Managers**

*A Federal Court authorized this notice.  This is not a solicitation from a lawyer.*

**PLEASE READ THIS NOTICE CAREFULLY**

| **1.  Why did I get this notice package?** |
| --- |

Records indicate that you are or were employed by Healthcare Services Group, Inc. ("HSG") as a salaried housekeeping Account Manager ("AM") and opted into the collective action lawsuit that has been filed in Federal Court for the Eastern District of Texas, titled *Kelly v. Healthcare Services Group, Inc.* (E.D. Tex. Case No. 2:13-cv-0441) (the "Lawsuit") alleging violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

On June 17, 2015, the parties reached a settlement of the Lawsuit.  You are receiving this Notice because you are a member of the Settlement Class covered by the settlement, and may be entitled to receive money.  This Notice describes the settlement and described how you can obtain a monetary recovery from the settlement.

| **2. What is this lawsuit about and why did it settle?** |
| --- |

The Lawsuit, which has been actively litigated for over two years, alleges that HSG violated the FLSA by failing to pay housekeeping AMs the full amount of wages they were due, including overtime. HSG denies violating any laws and contends that AMs were properly paid on a salaried basis and received all wages they are owed.

Even though HSG has strong defenses to the Lawsuit, it has decided to settle.  The settlement enables HSG to dedicate its time and resources to ongoing business operations and, as such, benefits its employees and clients.

Likewise, the employees' attorneys, who are referred to as "Class Counsel," believe the settlement greatly benefits the Class members. Settlement enables the Class members to avoid the risk that HSG will win the Lawsuit, in which case they will recover nothing. Settlement also enables the Class members to recover money without further delay.

The parties' attorneys negotiated the settlement after exchanging information that has enabled each side to understand the risks of proceeding with adversarial litigation. Class

27

Counsel believe the proposed settlement is fair and serves the best interest of the Class members. The Federal Judge overseeing the Lawsuit has approved the settlement as fair.

| **3.   What does the settlement provide and how much will I be paid?** |
|---|

The settlement provides for a payment to AM class members based on the number of weeks each AM worked for HSG as a salaried housekeeping AM.

Our records show that you worked _____ eligible weeks during the relevant time period. Based on this calculation, your individual payment will be $_____.   One-half of your settlement amount will be paid in the form of a payroll check from which all ordinary payroll taxes and withholdings will be deducted. This payment will be reported on an IRS Form W2 issued at the end of the tax year. The other half of your settlement amount will be paid in the form of a non-payroll check from which no payroll taxes or withholdings will be deducted. This payment will be reported on an IRS Form 1099 issued at the end of the tax year.

If you believe that your workweek calculation is incorrect, you must send a letter explaining the number of workweeks you believe you are entitled to, along with any evidence to support that claim, to the Claims Administrator (preferably in the enclosed postage-paid envelope).   **The envelope must by postmarked by ____, 2015.**

| **4.   How can I receive my payment?** |
|---|

In order to receive your payment, you must complete and return the attached "Claim Form." You must return the "Claim Form" (preferably in the enclosed postage-paid envelope). **The envelope must be post-marked by [*insert date*].**

**HSG cannot retaliate against you for participating in this Settlement.**

| **5.   What am I giving up to receive a payment?** |
|---|

Once the effective date of the Settlement has passed, the Lawsuit will be dismissed with prejudice and, except as described in Section 6 below, you will fully release and discharge HSG from any and all claims that are asserted in the Lawsuit or that arise from or are related to the facts alleged in the Lawsuit.  When claims are "released," that means that a person covered by the release cannot sue the Released Parties for any of the claims that are covered by the Release.  The exact terms of the release in the Settlement Agreement are as follows:

Upon final approval of this Settlement Agreement, Named Plaintiffs on their own behalf and as the Named Representatives, all members of the Settlement Class, and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses,

28

dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Class Parties") hereby forever completely and irrevocably release and discharge Defendant, along with any of its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, and assigns, and each of their officers, directors, board members, trustees, shareholders, members, employees, agents, attorneys, auditors, accountants, benefits administrators or third party administrators, experts, contractors, stockholders, representatives, partners, insurers, reinsurers, and other persons acting on their behalf (collectively, the "Released Parties"), from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses resulting from unpaid wages, minimum wages, unpaid overtime, liquidated damages, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefit claims on account of unpaid wages and/or overtime, interest, attorneys' fees, holiday pay, sick pay, reimbursement for any travel or other expenses, meal and rest period compensation, day of rest claims, accrued vacation pay, breach of fiduciary duty, and any right or claim for civil penalties, any claim arising in contract or quasi-contract and related to the payment of wages, that any of the Releasing Class Parties have or may have had against any of the Released Parties arising out of the acts, facts, transactions, theories, occurrences, representations, or omissions set forth, or which could have been set forth, given the stated predicate allegations in the Complaint or Amended Complaint filed in the Kelly Litigation, and including any claim arising out of or under the Fair Labor Standards Act, any state or local wage payment law or ordinance, or any other claim arising out contract, quasi-contract, tort, breach of fiduciary duty, or other common law claim, as well as any other state or local statute, rule and/or regulation, or similar causes of action arising from or relating to the non-payment of wages alleged in the above referenced Complaints, (the "Released Claims") through the time of Final Approval Order.

By signing and returning this claim form, you represent and warrant that you have not assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate to any person or entity any of the Released Claims or any rights, claims, or causes of action arising therefrom.

| 7.   Are there more details about the settlement?  Questions? |
|---|

Yes. This Notice summarizes the most important aspects of the proposed settlement. You can review the entire Settlement Agreement, which contains additional terms not listed here, by obtaining a copy from the court file in this lawsuit.

If you have any questions about this Notice or Settlement, please call the Claims Administrator at (XXX) XXX-XXXX.

**PLEASE DO NOT CALL THE COURT OR THE CLERK ABOUT THIS SETTLEMENT OR NOTICE.**

| 8.   Do I have an attorney in this case? |
|---|

The Court has designated attorneys John Holleman of Holleman and Associates PA, and Dorotha Ocker of Chad West PLLC, as Class Counsel.  You can contact Class Counsel at:

> John Holleman
> Holleman and Associates, PA
> 1008 West Second St.
> Little Rock, AR 72201
> (501) 975-5040
>
> Dorotha Ocker
> Chad West PLLC
> 3606C S. Tyler Street
> Dallas, TX 75224

> HSG is represented by Kenneth D. Sulzer of Proskauer Rose LLP.

Date: [*insert date*], 2015          Approved as to Form and Content:

                                     Hon. Rodney Gilstrap
                                     United States District Judge
                                     U.S. District Court for the Eastern District of Texas

7860/36660-009 current/50380276v8

**EXHIBIT B**

CLASS COUNSEL NOTICE

## NOTICE OF POTENTIAL ISSUANCE OF COMMON STOCK IN SATISFACTION OF CLASS COUNSEL ATTORNEYS' FEES AND COSTS AWARD

**TO:**   **ALL COUNSEL WHO WILL, SUBJECT TO COURT APPROVAL, RECEIVE SHARES OF HEALTHCARE SERVICES GROUP STOCK IN EXCHANGE FOR CLAIMS FOR ATTORNEYS' FEES AND EXPENSES**

You are hereby notified that, in connection with the settlement agreement executed in connection with *Kelly v. Healthcare Services Group, Inc.* (E.D. Tex. Case No. 2:13-cv-00441-JRG), the Federal District Court in which the action is pending will hold a hearing to consider, among other things, whether to grant an application for the issuance of common stock of Healthcare Services Group ("HSG") in satisfaction of your claim for attorneys' fees and expenses in the above-referenced matter.  .  HSG has been advised that you may be a recipient of a portion of any such award if the application is granted by the Court in the amount requested or some lesser amount.[2]

The hearing at which the Court will consider the application for attorneys' fees and expenses will occur in the District Court for the Eastern District of Texas (Hon. Rodney Gilstrap, U.S. District Judge, presiding) in the [District] Courthouse, [Court's address]  on _____, 2015, at _____ CDT.  The settling parties have informed the Court that, if the Court finds that the terms and conditions of the stock award to counsel are procedurally and substantially fair to the counsel who will receive the stock, HSG will rely on the registration exemption found in Section 3(a)(10) of the Securities Act of 1933 in satisfying the attorneys' fees and expenses award.

**You have a right to appear at the hearing if you wish to be heard on this issue.  [If you intend to appear at the hearing, you must** file a notice of appearance with the Court and serve the notice on counsel by _____, 2015 as follows:][3]

[your notice must be filed with the Clerk of the District Court for the Eastern District of Texas at the [District] Courthouse, [Court's address] and]

[your notice must be served by facsimile, e-mail and/or next day (excluding Saturday or Sunday) express delivery on the following counsel:]

*Counsel for HSG*

The Court may, in its discretion, change the date and/or time of the hearing at which the application for attorneys' fees and expense will be considered without further

---

[2] Note – this notice is drafted based on a notice that was prepared for Texas state court, and should be modified as appropriate to meet the requirements of Federal court.

[3] Note – We assume the plaintiffs' counsel already have appeared in this matter by definition, but include this language just in case.  A notice of appearance isn't required for Section 3(a)(10) purposes and can be deleted if necessary.

32

notice to you.  If you intend to attend the hearing, you should confirm the date and time of the hearing with the Court.

No representations are made by HSG, any of the other settling parties or any of the counsel representing a settling party regarding (*i*) your ability to resell the stock you will receive if the Court approves the award or (*ii*) the tax consequences of receiving such stock.

In addition, no representations are made by HSG, any of the other settling parties or any of the counsel representing a settling party regarding the future value of the stock that will be issued if the Court approves the application for attorneys' fees and expenses. HSG will issue shares of common stock in the amount, timing and manger described in the settlement agreement.

***Please do not write or telephone the Court about this Notice or the issues addressed in it .***  If you have any questions, you should contact

BY ORDER OF THE FEDERAL DISTRICT COURT
FOR THE EASTERN DISTRICT OF  TEXAS


THE HONORABLE RODNEY GILSTRAP

_____, 2015

**EXHIBIT C**

ORDER APPROVING FAIRNESS OF CLASS COUNSEL FEES AND COSTS

## ORDER APPROVING FAIRNESS OF CLASS COUNSEL FEES AND COSTS

*Incorporation of Settlement Agreement* – To the extent not defined in this Order, this Court adopts and incorporates the definitions in the Settlement Agreement.

*Class Counsel Fees and Costs* – In satisfaction of the award of Class Counsel Fees and Costs,  HSG is hereby authorized to issue to Class Counsel shares of HSG common stock in the amount, timing and manner described in the Settlement Agreement, pursuant to Section 3(a)(10) of the Securities Act of 1933, as amended.  Having considered the fairness of the Class Counsel Fees and Costs at the Fairness Hearing, and having found the Notice to Class Counsel to be adequate, the Court finds that the terms and conditions of issuance of the stock by the Company in exchange for counsel's claims for attorneys' fees and expenses is procedurally and substantively fair to all recipients of such shares and that all conditions for reliance on Section 3(a)(10) have been met.  The Court acknowledges that it was advised at the time the Settlement Agreement was filed with the Court that the Company would rely on the registration exemption found in Section 3(a)(10) in issuing the subject common stock if the Court approved the issuance of the stock to counsel as both procedurally and substantively fair to the recipients.

*Registration exemption* –The Court has confirmed that Class Counsel are aware of and understand that in receiving the securities contemplated by the Counsel Fees and Cost award described in the Settlement Agreement, Class Counsel will not be provided with a prospectus that would be included in a registration statement and that the findings of fairness by the Court is the basis for the exemption from registration.

7860/36660-009 current/50380276v8

***Issuance of shares –*** The Court recognizes that the Parties' ability to have the shares issued to Class Counsel in a timely manner is a material component of the Settlement Agreement.  As such, HSG, its officers, employees and transfer agent(s) (including [  ] and any other transfer agent whom HSG shall later designate) hereby are authorized and instructed to issue to the Class Counsel unrestricted, free trading shares of HSG common stock (without any restrictive legends) as described herein and in the Settlement Agreement.

So ordered this _____ day of _____, 2015.

_____
HONORABLE RODNEY GILSTRAP
U.S. DISTRICT JUDGE